## WOODSIDE *et al. v.* LIPPOLD *et al.*

Where a mortgagee, to avoid the expense of a foreclosure sale, took from the mortgagor, in settlement of the debt secured by the mortgage, a conveyance of the mortgaged property at its full valuation, retaining his mortgage uncancelled, and subsequently conveyed the property to a third person, at the same time delivering to him, without any assignment thereof, the mortgage still uncancelled, and where the mortgagee afterwards, at the instance and request of his grantee, made an entry of satisfaction upon his mortgage and had the same cancelled of record, both the mortgagee and his grantee having at the time actual notice of an intervening mortgage, but acting under a misapprehension, for which the holder of the intervening mortgage was in no wise responsible, that he would not insist upon the enforcement of the same, the lien of the first mortgage was extinguished, and equity will not restore it to its priority over the intervening mortgage.

Argued June 5, —Decided July 19, 1901.

Equitable petition.    Before Judge Lumpkin.  Fulton superior court.    January 18, 1901.

On February 26, 1892, Mrs. Venable, to secure a loan of $10,-000, executed to the American Trust and Banking Company a mortgage on certain described realty.    To secure a loan of $2,000, she, on the following day, executed a mortgage on the same property to Skinner, who transferred it to the American Trust and Banking Company.    These mortgages were duly recorded.    On December 26, 1893, she executed a mortgage to the Empire State Bank on the same property, to secure a debt of $1,592, which mortgage was transferred to Lippold, and it and the transfer duly recorded.    On March 18, 1896, Mrs. Venable conveyed the mortgaged premises, in fee simple, with warranty of title, to the American Trust and Banking Company.    At the time this conveyance was made, the banking company had no actual notice of the mortgage held by Lippold, and Mrs. Venable was insolvent and owned no property except the mortgaged premises.    She had paid no part of the principal of the mortgage debt held by the banking company, and had been unable to pay the interest thereon as it accrued.    The total amount of her indebtedness to the banking company at the time of the conveyance, consisting of principal, interest, and certain taxes on the property paid by the company, was $16,254.    The consideration named in the deed was $14,582.    The property when conveyed was not worth more than the consideration named, and probably not as much.    The banking company credited

Mrs. Venable with $14,582, and charged the balance to profit and loss.   Neither the notes nor the mortgages were delivered to Mrs. Venable; the company, being afraid of the title, kept the mortgages open, there being no agreement as to whether or not they should be satisfied.   Prior to the conveyance the banking company had obtained judgments on the notes it held, secured by the mortgages, and the deed recited that it was executed for the purpose of avoiding further expense and a forced sale of the property.   On April 12, 1897, the American Trust and Banking Company conveyed the premises, by warranty deed, to Woodside.   At the time of this conveyance the banking company still held its mortgages uncancelled. J. R. Gray, whose law firm was general counsel for the American Trust and Banking Company, testified that, after the sale by the banking company to Woodside, Mr. C. W. Smith, Woodside's attorney, after investigating the title, reported to the counsel of the banking company that he had had an interview with Mr. P. F. Smith, Lippold's attorney, who had his mortgage for foreclosure, and that Lippold had abandoned his mortgage and there would be no effort to foreclose it; that, acting upon this information and at the request of Mr. C. W. Smith, the banking company made an entry of satisfaction upon its mortgages and had the same cancelled of record.   The Skinner mortgage was cancelled April 30, 1897, and the mortgage to the banking company was cancelled May 7, 1897.   There was evidence that the banking company would not have cancelled its mortgages but for the fact that it believed that there would be no effort to set up the Lippold mortgage.   Subsequently Lippold filed a petition to foreclose the mortgage held by him, and Woodside and the American Trust and Banking Company filed the present petition to enjoin Lippold from foreclosing his mortgage and to have it cancelled, and prayed that the cancellation of the mortgages held by the banking company be treated as of no effect, that the lien of the banking company be upheld, that its mortgages be foreclosed, and that a decree be entered in its favor for the sum alleged to be due it, to be enforced by sale of the property, and for general relief.   Mrs. Venable was made a party defendant to this petition.   Upon the trial there was a verdict for the defendants.   The petitioners made a motion for a new trial, complaining that the verdict was contrary to law and the evidence, and of specified parts of the charge of the court.   The motion was overruled, and the petitioners excepted.

*Ellis & Ellis, Gray, Brown & Randolph,* and *C. W. Smith,* for plaintiffs.    *Charles A. Read,* for defendants.

FISH, J.    This case turns upon the question whether, under the facts stated, equity will restore the liens of the mortgages cancelled by the American Trust and Banking Company to their original priority over the mortgage held by Lippold.    Under the view we take of the matter, it is unnecessary to determine whether, according to the equitable doctrine relating to merger, the liens of the mortgages held by the banking company were merged in the title when Mrs. Venable conveyed the premises to the company, or were extinguished by the settlement of the mortgage debt in that transaction; for, in our opinion, there can be no doubt that the liens of such mortgages were absolutely extinguished when at the request of Woodside, who had purchased the mortgaged property from the banking company and taken a warranty deed thereto, the banking company made the entries of full satisfaction upon such mortgages and had them cancelled of record, this being done in order to clear the record of liens against the property.    If up to the date of Woodside's purchase there had been no merger and the banking company's mortgages were then alive, and if the banking company and Woodside intended when he purchased that he should take all the interests and rights which the banking company held in and to the property, and if under such circumstances no merger or extinguishment of the banking company's mortgages occurred, in equity, when Woodside acquired the title, yet when the banking company subsequently, and at his instance and request, deliberately marked the mortgages satisfied and had them cancelled of record, they never having been assigned to Woodside, there was then manifested an express and unequivocal intention on the part of both Woodside and the banking company that the liens of its mortgages should no longer exist — that they should merge in the title which Woodside had acquired — and such intention became effective and the mortgages were extinguished.    It has been uniformly held, in the application of the equitable doctrine concerning merger, that the intention, when expressed, of the person in whom the two estates or interests meet must control.    2 Pom. Eq. Jur. (2d ed.) § 791; 15 Am. & Eng. Enc. L. (1st ed.) 325; *Ferris* v. *Van Ingen,* 110 *Ga.* 111.    In Wiedner *v.* Thompson, 69 Iowa, 36, the mortgagor conveyed the mortgaged property to the mortgagee, who con-

veyed it to a third person, who gave his note in substitution of the note of the mortgagor, and the holder of the mortgagor's note delivered it to such third person, marked "paid," and cancelled the mortgage of record.   A judgment was rendered against the mortgagor after his execution of the mortgage but prior to his conveyance to the mortgagee.   In an action by the purchaser from the mortgagee to have the cancellation of the mortgage set aside, on the ground that it was not the purpose of the parties to cancel it and that it was against their interests to do so, it was held that the cancellation could not be set aside.   In the opinion Beck, J., said: " It can not be doubted that the law will look to the intention of the parties, and the interest of the plaintiff, in order to determine whether the mortgage is to be regarded as paid and cancelled. The fact that it was cancelled of record will not avail to discharge the mortgage, if the parties intended that the lien should continue, and the plaintiff's interests demanded it.   But if the parties intended to discharge the mortgage, and the debt was in fact paid, and not transferred to the plaintiff, the cancellation must stand, and the lien be regarded as discharged.   The mere fact that plaintiff's interests would have been better protected by permitting the lien to stand will not control against the intention, clearly established.   The law will permit a party in such a case, as in others, to act and contract in a manner which would not result to his interest."   See Campbell *v.* Carter, 14 Ill. 286.

The satisfaction and cancellation of the banking company's mortgages seem to have been made under a mistake of fact, that Lippold had abandoned his mortgage and would make no effort to foreclose it.   While equity will grant relief against a mistake of fact, it is well established that such a mistake must be of such a nature that it could not, by reasonable diligence, have been avoided at the time.   Equity will not relieve against the results of culpable and inexcusable negligence.   By the exercise of the slightest diligence on the part of Woodside and the banking company, they could have readily ascertained the intention of Lippold in reference to the enforcement of his mortgage.   It does not appear that he, or his attorney, ever intimated that the mortgage had been abandoned. The attorney for the banking company gave as a reason for the satisfaction and cancellation of the company's mortgages that the attorney for Woodside reported that he had had an interview with the at-

torney for Lippold, and that Lippold would not enforce his mortgage. Equity will not grant relief under such circumstances. The verdict being demanded by the undisputed facts, there was no error in refusing to grant a new trial.

　　　　　　*Judgment affirmed. All the Justices concurring.*