BENENSON *et al. v.* EVANS *et al.*

1. Under the facts of this case the instructions of the court to the jury, as set out in divisions 1, 3, 4, and 5 of the opinion, are not error for any reason assigned. Nor is the failure to charge as set out in division 2 error.

2. A purchaser of property who has discharged an incumbrance thereon will be subrogated to the lien of such incumbrance as against the holders of other incumbrances of which he had no notice, but not as against the holders of other incumbrances of which he had notice, either actual or constructive.

3. Actual possession of land is notice to the world of the rights of the occupants therein, and one who buys land while others are in actual possession thereof is affected with notice.

4. One seeking to be subrogated to the lien of a mortgage which he has paid must show that the owner of the mortgaged premises at the time of such payment was in law bound to pay the debt.

5. The verdict was authorized by the evidence, and the court did not err in refusing a new trial.

No. 5046. JULY 16, 1926. REHEARING DENIED SEPTEMBER 22, 1926.

Equitable petition. Before Judge W. E. Thomas. Colquitt superior court. July 29, 1925.

*Waldo DeLoache,* for plaintiffs in error.

*W. A. Covington* and *Erle B. Askew,* contra.

HILL, J. Sallie Evans and Rufus Evans filed an equitable petition against J. Benenson and W. C. Clark, to enjoin Benenson from

---

Subrogation, 37 Cyc. p. 447, n. 41; p. 448, n. 48.
Vendor and Purchaser, 39 Cyc. p. 1744, n. 85.

selling certain land described in the petition. The petition alleged, in substance, that the plaintiffs are the owners of certain described land in Colquitt County, the nature of their title being as follows: Eli Clark died intestate in Colquitt County in the year 1905, and W. C. Clark was appointed administrator on his estate, which consisted of real and personal property of considerable value. Among the heirs at law of the intestate were the plaintiff, Sallie Evans, and her sister, a minor, Inez Clark. Before the final winding up of the estate, there being a considerable sum due to Sallie Evans and Inez Clark, the administrator contracted to give them, in lieu of the money that was due them by the administrator, the land in controversy, and marked out the boundaries of said tract of land and abandoned all control over it himself. In the meantime J. T. Evans, the husband at that time of Sallie Evans, was appointed guardian of Inez Clark, who lived with her sister Sallie Evans, who with her sister went into possession of the land in the year 1913. In the year 1914 Inez Clark married Rufus Evans, and lived with him as his wife until her death in the year 1916, when she died leaving as her heirs at law her husband and a child named Rufus Hershell Evans, which child died on September 2, 1916, leaving Rufus Evans as the sole heir at law. The plaintiff, Sallie Evans, and her husband, J. T. Evans, have had full possession of said land as being one of the tenants in common. They have lived on the land continuously since 1913 and farmed the same, and their possession has been open and notorious and peaceable, although no deed to it has ever been made by W. C. Clark, who, being often asked to make such deed, has always on one pretext or another failed to do so, and he is now totally insolvent. Both Sallie Evans and Inez Clark signed a receipt as heirs at law of Eli Clark for their portion of their father's estate, in consideration of the sale of the said 46-2/3 acres of land to them by W. C. Clark. In November, 1921, W. C. Clark executed and delivered to J. Benenson a security deed to 98-1/2 acres of land, more or less, which is described in the petition. This land includes the land sold to the plaintiff and her sister, and J. Benenson has through his attorneys advertised the whole of the 98-1/2-acre tract for sale under the power of attorney contained in the security deed, the sale being advertised for November 19, 1923. At the date of the security deed Sallie Evans was living on the

land in controversy, and had been for several years, and has been so residing there continuously since that date. Plaintiffs did not know that Benenson was taking a security deed on their land, and he knew, or could have known by ordinary diligence, of the fact of this residence and possession and of the claims of the plaintiffs to the tract of 46-2/3 acres. Plaintiffs, waiving discovery and alleging that they are remediless at law, prayed that J. Benenson and his agents and attorneys be enjoined from further proceeding with the design of selling the 46-2/3 acres described in the petition; that the court decree that W. C. Clark execute and deliver to plaintiffs a warranty deed to the land so claimed by them; that the court decree the cancellation of the lien of said security deed on the land claimed by petitioners, as constituting a cloud on their title, etc.

The defendant filed an answer in which he denied each and every material allegation of the petition, except his residence in the county. He specifically avers that the property described in plaintiffs' petition was heavily incumbered in the approximate amount of $2,000 at the time of the alleged purchase of the property by plaintiffs, and has been so incumbered since that time; that the proceeds of the loan made to W. C. Clark by James Benenson went to retire an existing loan on the property, which in turn went to retire the loan existing on the property at the time of the alleged purchase of the property; and it is averred that in the event the purchase of the property was made by plaintiffs in good faith, as alleged in the petition, this defendant would in equity and good conscience be entitled to be subrogated to the rights of the mortgagees as of the date of the alleged purchase of the property by plaintiffs, which rights would be superior to the rights of the plaintiffs as purchasers. The defendant avers that plaintiffs knew, at the time this defendant proposed to make said loan on the strength of the security of said property, that W. C. Clark was seeking a loan from J. Benenson, and that this defendant was about to make the loan, and that said property would be pledged in security thereof, and that the proceeds of the same would be used to retire a then existing incumbrance on said property, which if not retired would cause a sale of the property to be had, which sale would result in the eviction of the plaintiffs from the premises; and plaintiffs knew that this defendant, if informed of their

contentions as to the state of said title, would not make said loan and that said refusal on the part of this defendant to make said loan would result in their eviction from said premises as above alleged, and plaintiffs, with full knowledge of these facts and for the reason herein set out, failed and refused to inform this defendant of their present contentions as to their interest in the property; that such conduct on the part of the plaintiffs in so failing, neglecting, and refusing to inform this defendant of such contentions, amounts to and constitutes an equitable estoppel denying to such petitioners the right to now urge such contentions to the injury and hurt of this defendant.

On the trial of the case the jury returned a verdict in favor of the plaintiffs. The defendants filed a motion for new trial, which was overruled, and the defendants excepted.

1. The court charged the jury as follows: "If W. C. Clark sold to his sisters, Sallie Evans and Inez Clark, the land described in the petition for the interest of Sallie Evans and Inez Clark in the estate of Eli Clark, and pursuant to such sale put them in possession and the full purchase-money had been paid, then and in that event the title to the lands would be in Sallie Evans and Inez Clark, although W. C. Clark did not then or at any time thereafter make them a deed to the land in controversy." This charge is not reversible error, under the facts of this case, for the alleged reason that the undisputed evidence was that the title to the property at the time of the alleged sale by Clark to his sisters was in George M. Forman as grantee in a deed to secure a debt, nor for the alleged reason that the movant relied on said deed as the foundation of his right to subrogation contended for by him; and that he was accordingly injured by the charge, in that the instruction was to the effect that title to said property would be in the plaintiffs instead of in George M. Forman, as contended by movant.

The charge states that the "title" to the land would be in Sallie Evans and Inez Clark in the circumstances stated. The court should have qualified this expression by saying that the "equitable title" would be in them. However, the omission of the word "equitable" will not require a reversal, especially since the charge is not excepted to on that ground.

2. Under the facts of this case the court did not err in fail-

ing to charge, in connection with the charge on the right of subrogation, and how such right arises, "what facts or circumstances might constitute an implied agreement, whereby movant would be entitled to be subrogated to the rights and remedies of creditors whose liens he paid off, the court failing and neglecting to charge in this connection that an agreement between movant and the debtor to the effect that movant was to have a first lien on the property in question would raise an implied agreement that he was to be subrogated to the rights of the creditor whose lien his funds retired."

3. The court charged the jury as follows: "One who pays off and discharges a prior incumbrance on land, voluntarily, where he has no interest to protect, without any agreement, express or implied, with either the debtor or creditor that he shall be subrogated to the rights of the prior lienholder, is not entitled to subrogation." This charge was not error for the reason assigned that the same was not authorized by the evidence.

4. Exception is taken to the following charge of the court: "If the plaintiffs were in possession of the land described in the petition at the time Sessions Loan & Trust Co. paid off and discharged the lien to George M. Forman and took a deed from W. C. Clark to secure him, then and in that event Sessions Loan & Trust Co. would not be entitled to be subrogated to the rights and remedies of George M. Forman as against the plaintiffs in this case. Possession of the plaintiffs under such circumstances would be notice to Sessions Loan & Trust Co. of whatever claims the plaintiffs had to the land." This charge was not error for the reason assigned that the same was equivalent to, and was, an instruction to the effect that constructive notice of the outstanding claim of George M. Forman would, as a matter of law, preclude the Sessions Loan & Trust Co. from being subrogated to the rights of George M. Forman.

5. The court charged the jury as follows: "I charge you that should you find from the evidence that plaintiffs were in possession of the lands described in the petition and claiming title thereto under the contract they contend was made with W. C. Clark, if you find such to be the facts, at the time Benenson made a loan to W. C. Clark and took a security deed to secure the same, then and in that event the possession of the plaintiffs would be notice to

Benenson of whatever claim they had on the land, and Benenson would not be entitled to be subrogated to the rights of either Sessions Loan & Trust Co. or George M. Forman." The criticism of this charge is that constructive notice will not of itself and as a matter of law prevent one from succeeding to the rights and remedies of a prior lienholder. This criticism is without merit, in view of the facts of the case.

6. It appears from the record that in 1905 Eli Clark died intestate, leaving as his heirs at law, among others, W. C. Clark, Sallie Clark (who later married J. T. Evans), and Inez Clark, who subsequently married Rufus Evans. Inez Clark subsequently died, leaving as her heirs at law her husband and a child, which child died in 1916, leaving the petitioner, Rufus Evans, as her sole heir at law. W. C. Clark was appointed administrator upon the estate of Eli Clark. Sallie Evans and Inez Clark were entitled to the sum of $442.85 each as their distributive shares in the estate of their father, Eli Clark. In 1912 W. C. Clark owned 92-1/2 acres of land, which included the 46-2/3 acres in controversy, and on which there was a loan in favor of George M. Forman in the sum of $1,400. W. C. Clark made a trade with his two sisters whereby he sold them the 46-2/3 acres described in the petition for the amount of their interests in their father's estate, and as a part of the consideration of the trade W. C. Clark agreed to pay off the loan due to Forman, which was secured by a deed to the property. In 1913 Sallie Evans and Inez Clark gave receipts to W. C. Clark for the sum of $442.85 each, in full settlement of their interests as heirs at law in the estate of Eli Clark, and consented for the administrator to be discharged on February 13, 1912. Sallie Evans and Rufus Evans went into possession of the land described in the petition, that is, 42-2/3 acres, made valuable improvements thereon, and continued in possession since 1912, claiming title thereto under the contract made with W. C. Clark. On October 1, 1916, W. C. Clark executed a security deed to Sessions Loan & Trust Co., to secure a debt of $1,500, and the Forman deed was paid off by W. C. Clark and cancelled of record on December 6, 1916. Under an agreement with Clark the Sessions Loan & Trust Co. was to have a first lien on the property. Neither Sallie Evans nor Rufus Evans knew of the loan made by W. C. Clark with the Sessions Loan & Trust Co. At the time this loan was made both

plaintiffs were in possession of the land described in the petition, claiming title to it under the trade made with W. C. Clark. On November 12, 1921, W. C. Clark secured a loan of about $3,000 from J. Benenson on the land described in the petition, and other lands adjacent thereto, and the Sessions Loan & Trust Co. deed was cancelled of record on November 17, 1921. Benenson testified he was to "come in the same place as the Sessions people." At the time of the Sessions loan Sallie Evans and Rufus Evans were occupying the land and claiming title to it under the contract with W. C. Clark, set out above. Neither Sallie Evans nor Rufus Evans knew of the loan made by Benenson until the latter advertised the land for sale. The evidence for the plaintiffs tends to show that at the time the contract between W. C. Clark and his sisters was entered into Clark put them in possession of the land and marked out a dividing line between the lands of Clark and the land he sold to his sisters, and the same was definitely established, marked out, and recognized by the parties as such. On the trial the jury returned a verdict for the plaintiffs.

It is contended that inasmuch as Benenson discharged and paid off the lien of the Sessions Loan & Trust Co., which was in part on the land of the plaintiffs, at the time he took his security deed and cancelled the deed to the Sessions Loan & Trust Co., he is entitled to be subrogated to the rights of George M. Forman; and this is the controlling question in the case. The questions involved in the exceptions to the charge of the court, and the failure to charge, revolve around this one question. Unquestionably a purchaser of property who has discharged an incumbrance thereon at the request of the debtor will be subrogated to the lien of such incumbrance as against the holders of other incumbrances of which he had no notice, but not as against the holders of other incumbrances of which he had notice, either actual or constructive. 27 Am. & Eng. Enc. L. (2d ed.) 238; and see *Woodside* v. *Lippold,* 113 *Ga.* 877 (39 S. E. 400, 84 Am. St. R. 267). In *Ragan* v. *Standard Scale Co.,* 128 *Ga.* 544 (58 S. E. 31), it was held: "Where one purchases a certain piece of property against which there are two recorded mortgages, and pays off the senior mortgage out of the purchase-money, and it is cancelled, equity will not, in the absence of an agreement between the parties to that effect, subrogate him to the rights of the senior mortgagee, as against

the other incumbrancer, whose lien was subject to the senior mortgage, but prior to the purchase." At the time Benenson took the loan deed upon the land in controversy the plaintiffs were in actual possession of it, and the slightest inquiry of those in possession would have put Benenson on notice as to the claim which they were asserting to the possession and title thereto. Actual possession of land is notice to the world of the rights of the occupants therein, and one who buys land while others are in actual possession thereof is affected with notice. *Finch* v. *Beal,* 68 *Ga.* 594. In *Baldwin* v. *Sherwood,* 117 *Ga.* 827 (45 S. E. 216), this court said: "Where one enters into possession of land under a valid parol contract of exchange with another, and surrenders under such contract possession of land owned by him, he obtains a complete equity in the land acquired by the exchange, superior to the legal title of the other party to the contract." And see *Collins* v. *Moore,* 115 *Ga.* 327 (41 S. E. 609). We are of the opinion that when Benenson paid off the lien of the Sessions Loan & Trust Co. upon the land in controversy, while the plaintiffs were in possession of the land, he can not be subrogated to the rights of the prior lienholder. Besides, the plaintiffs were in possession of the lands in controversy when the Sessions Loan & Trust Co. secured a deed thereto. Furthermore, Benenson was a mere *volunteer* when he paid off the lien of the Sessions Loan & Trust Co. Nor is there anything in the record to show that there was any agreement between Benenson and Clark that he was to be subrogated to the rights of the Sessions Loan & Trust Co., much less to the rights of Forman. The Sessions Loan & Trust Co. could not have been subrogated to the rights of George M. Forman, for the reason that at the time the deed to the Sessions Loan & Trust Co. was executed by Clark, Clark had parted with his title to the property in controversy, and the plaintiffs, Sallie Evans and Rufus Evans, were then in actual possession of the land, claiming it under the contract made with Clark; and this being so, then Benenson certainly can not be subrogated to the rights of Forman. Benenson, it will be remembered, did not discharge the lien held by Forman, but on the contrary it appears that the Sessions Loan & Trust Co. discharged the lien held by Forman in 1916, and it was five years later that Benenson discharged the lien in favor of Sessions Loan & Trust Co. In order for Benenson to assert a valid **claim of**

subrogation to the rights of Forman, it would be necessary that he have an express contract to that effect either with Clark or Forman, or that he was compelled to pay off the former lien in order to protect an existing valid lien of his own; but, as already pointed out, no such contract existed, and therefore he can not be subrogated to the rights of Forman. For a general discussion of this subject see the following cases: *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204); *McCowan* v. *Brooks,* 113 *Ga.* 532 (39 S. E. 115); *Ragan* v. *Standard Scale Co.,* supra; *Lutes* v. *Warren,* 146 *Ga.* 641 (92 S. E. 58); *Erwin* v. *Brooke,* 159 *Ga.* 683 (126 S. E. 777). The plaintiffs were the owners of the land in controversy and were in possession of the property when Benenson paid off the lien to the Sessions Loan & Trust Co. The jury by their verdict found this to be true, when they returned a verdict in favor of the plaintiffs. So, we are of the opinion, in no view of the case is Benenson entitled to be subrogated to the rights either of the Sessions Loan & Trust Co. or of George M. Forman. The trial judge did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Beck, P. J., and Hines, J., who dissent.*

HINES, J. 1. The charge of the court dealt with in the first division of the opinion is, in my opinion, erroneous. The effect of the transaction between W. C. Clark and his sisters, by which they were put in possession of the land in dispute, did not vest in them the title to this land, but only vested in them the equitable title of Clark thereto. The absolute title to this property was in Forman, under the security deed executed to him by Clark. Civil Code (1910), § 3306. It is conceded by the opinion of the majority that this instruction is inaccurate, but it is said that the inaccuracy does not require a reversal. This charge was calculated to mislead the jury, and the defendant was entitled to an accurate instruction upon the status of the title of plaintiffs to the premises in dispute.

2. Benenson claims that the court erred in failing to charge that an agreement between him and Clark, to the effect that he was to have a first lien on the property in question, would raise an implied agreement that he was to be subrogated to the rights of the creditor whose lien his funds retired. It seems to me that

this contention is well taken.    One who advances money to pay off an encumbrance upon realty, at the instance either of the encumbrancer or the holder of the encumbrance, under an agreement that the advance made is to be secured by a first lien on the property, is not a mere volunteer, and will be subrogated to all the rights of the person holding the encumbrance.    In equity, that was an agreement that the security deed of the Sessions Loan & Trust Company should become security for Benenson's loan.    Watson v. Wilcox, 39 Wis. 643; *Wilkins* v. *Gibson,* 113 *Ga.* 31, 45 (supra). "That was the substance of the transaction, and equity will effectuate the real intention of the parties, where no injury is done to an innocent party by applying the principle of conventional subrogation."    So I think that the defendant was entitled to this instruction on this vital issue in the case, without any request therefor; and the failure of the court to give such instruction requires the grant of a new trial.

3.    The charge dealt with in the fifth division of the opinion of the court is erroneous.    In effect, the court told the jury that possession of the land in dispute by the plaintiffs was notice to Benenson of whatever claim they had to it, and that Benenson would not be entitled to be subrogated to the rights either of the Sessions Loan & Trust Company or of George M. Forman.    In other words, the court instructed the jury that constructive notice of the claim of the plaintiffs would bar all rights of Benenson to subrogation.    "Knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money, under an agreement of the character above referred to, from claiming the right of subrogation, when the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer."    *Wilkins* v. *Gibson,* supra.    The same principle is applicable under the facts of this case.

4.    In the majority opinion Benenson is treated as a mere volunteer.    One is never a mere volunteer who pays money at the request of the person whose liability he discharges.    Home Savings Bank v. Bierstadt, 168 Ill. 618 (48 N. E. 161, 61 Am. St. R. 146); Ft. Jefferson Imp. Co. v. Dupoyster, 112 Ky. 792 (66 S. W. 1048, 2 L. R. A. (N. S.) 263); Union Mortgage etc. Co. v. Peters, 72 Miss. 1058 (18 So. 497, 30 L. R. A. 829); 25 R. C. L. Subrogation, § 12.

5. Upon broad principles of equity and justice the equitable right of Benenson to subrogation is superior to the plaintiffs' equitable title. They took this land when it was encumbered by a security deed which put the absolute title in one Forman. It is true that under their contention their brother was to pay off this encumbrance, but this he failed to do. Before they could acquire the legal title to this land they would have to pay off this encumbrance. This was done by the Sessions Loan & Trust Company, under an agreement by which it was to have a first lien on this land. This company paid off the debt secured by the deed to Forman, and afterwards had this deed cancelled of record. By paying off this encumbrance under such an agreement, the Forman deed became a security for the payment of their loan. Equity will treat it as such. The cancellation of this deed on the supposition that they were getting the first lien upon the property will not destroy this security. In these circumstances equity will treat it as uncancelled and of full force. When Benenson advanced the money to pay off the debt secured by the deed which the Sessions Loan & Trust Company held on this land, under an agreement by which he was to have the first lien thereon, the deed of the Sessions Loan & Trust Company became a security for his loan. Equity will so treat it, though cancelled afterwards. This does not defeat any just rights of the plaintiffs. They still have the equitable title which they acquired under the transactions with their brother. Under that transaction the Forman encumbrance had to be discharged either by their brother or themselves. This was not done. This encumbrance was lifted by the Sessions Loan & Trust Company under circumstances by which they acquired the security of the Forman deed. The encumbrance was finally lifted by Benenson under circumstances by which he acquired the security of Sessions Loan & Trust Company. Under these circumstances it would be inequitable and unjust to deny to Benenson the right of subrogation, to the extent of the encumbrance upon this land at the time when the plaintiffs took this land from their brother.

For the above reasons, I am compelled to dissent from the judgment of the majority. I am authorized by Presiding Justice Beck to say that he concurs in this dissent.