## BANK OF STEPHENS *v.* GROWERS FINANCE CORPORATION *et al.*

No. 6594.   FEBRUARY 16, 1929.

W. W. *Armistead, Lamar C. Rucker,* and *Horace & Frank Holden,* for plaintiff in error.

*Erwin, Erwin & Nix,* and *Hamilton McWhorter,* contra.

BECK, P. J. (After stating the foregoing facts.) The intervenor, Bank of Stephens, can not claim any priority over the plaintiff under the mortgage taken from Mrs. Leila Wells on March 15, 1926, for the reason that when that mortgage was taken the plaintiff's bill of sale had been executed, delivered, and recorded, and the intervenor had constructive notice thereof. While the intervenor alleged that the plaintiff had actual notice and knowledge of this mortgage, as well as the constructive notice arising from the fact that it had been recorded, nevertheless it could claim nothing under the mortgage executed by F. W. Wells, for the reason that it sold, transferred, and delivered that mortgage to Mrs. Leila Wells on March 15, 1926, and the mortgagor in the mortgage to the bank had sold the mortgaged live stock to Mrs. Wells, as appears from the allegations of the intervention. According to these allegations Mrs. Wells, prior to this last date, March 15, 1926, had become the purchaser and the owner of the live stock covered by the mortgage previously made by Wells to the bank; and when the Bank of Stephens transferred to Mrs. Wells, on that date there was

a merger of the two interests, that represented by the mortgage transfer and the title with which Mrs. Wells became vested by reason of the purchase. See § 3682 of the Civil Code, relating to merger, and annotations to that section in Park's Code under the catchword "Mortgage," and the annotations in Michie's Code to the same section. It is true that the question as to whether or not a merger results from the transfer of the mortgage to the purchaser of the legal title to the property is sometimes a question of intention of the parties. In the present case it is clear from the language of the written transfer that all right, title, and interest of the intervenor, the mortgagee named in the mortgage from F. W. Wells, was surrendered and transferred to Mrs. Wells, the language being, "For value received we [the bank] hereby sell and transfer the within note and mortgage to Mrs. Leila Wells, with all rights and privileges, without recourse. This March 15, 1926." Eo instanti, upon the execution and delivery of the mortgage upon which this transfer was written, there was a merger of the interest in the title.

It is true that in the amendment offered to the intervention it is alleged that "The Bank of Stephens and Mrs. Wells intended to make the transfer of the mortgage made in 1921 conditional on her paying the debt of her husband, and reformation to this extent is prayed." This amendment was properly disallowed. The language of the transfer shows that it passed the ownership of the note and mortgage to Mrs. Wells, "with all rights and privileges," and then the words "without recourse" are added. Such a transfer having been executed, the bank no longer had any interest under the mortgage. It is true that on the same day it took another mortgage from Mrs. Wells, the transferee and the owner of the title to the property in question, who became owner by purchase subsequently to the execution of the mortgage. But prior to that time Mrs. Wells had executed a bill of sale to the property after she purchased it, which conveyed the title to the property to the Growers Finance Corporation, the defendant in error. The amendment offered by plaintiff in error, in which it is alleged that it was intended to make the transfer of the mortgage executed in 1921 conditional "on her [Mrs. Wells] paying the debt of her husband, and a reformation of this transfer to this extent is prayed," can not avail the intervenor, because the allegations are not sufficient to authorize a reformation. For "equity will not reform a written

contract . . by inserting a condition therein, except upon proof that the parties intended, at the time of executing the contract, to insert it, and that it was omitted by fraud, accident, or mistake of fact, and the mistake must have been that of both parties, and not of one only." *Bell* v. *Americus &c. R.*, 76 *Ga.* 754. This is a rule that has been very often stated. In *Woodside* v. *Lippold*, 113 *Ga.* 877 (39 S. E. 400, 84 Am. St. R. 267), it was said: "Where a mortgagee, to avoid the expense of a foreclosure sale, took from the mortgagor, in settlement of the debt secured by the mortgage, a conveyance of the mortgaged property at its full valuation, retaining his mortgage uncanceled, and subsequently conveyed the property to a third person, at the same time delivering to him, without any assignment thereof, the mortgage still uncanceled, and where the mortgagee afterwards, at the instance and request of his grantee, made an entry of satisfaction upon his mortgage and had the same canceled of record, both the mortgagee and his grantee having at the time actual notice of an intervening mortgage, but acting under a misapprehension, for which the holder of the intervening mortgage was in no wise responsible, that he would not insist upon the enforcement of the same, the lien of the first mortgage was extinguished, and equity will not restore it to its priority over the intervening mortgage." It is true that in the case last cited there had been an entry of satisfaction of the mortgage and the same had been canceled of record. But that fact can not differentiate the cases in principle, because under the language of the transfer there was an absolute merger in the holder of the legal title of both interests as soon as the transfer was executed, and the effect was the same as though it had been actually canceled so far as it affects any rights of the bank.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*