INVESTORS SYNDICATE *et al. v.* THOMPSON *et al.*

No. 7746.   FEBRUARY 14, 1931.   REHEARING DENIED FEBRUARY 28, 1931.

206

208

*Scott Candler* and *William H. Mewbourne,* for plaintiffs in error.
*H. R. Lee* and *George & John L. Westmoreland,* contra.

RUSSELL, C. J. The ruling stated in the first headnote needs no further elaboration.

In the second ground of the amendment to the motion for a new trial the movants complain that the court did not charge the jury on the law of subrogation as applied to this case, and they aver that the court should have charged the jury to the effect that if the money derived from Investers Syndicate was used to pay off the liens or loan deeds superior at the time to the loan deed

under which plaintiff claims his rights, with the understanding or agreement between Investors Syndicate and the Merchants & Mechanics Bank, the holder of the superior liens on the property involved in this case, then Investors Syndicate would be subrogated to the rights of these discharged liens, which at the time they were paid off were superior to the lien under which plaintiff claimed his rights. It is contended that this issue was not only distinctly raised by the pleadings, but was substantiated by the uncontradicted evidence of a named witness; and that as to this material issue a written request to charge was unnecessary, although movants' counsel orally called the court's attention and requested a charge on this issue.

It has often been held that a mere oral request amounts to nothing in the way of affording a substitute for the request in writing prescribed by our Code and practice. It is equally true that it is the duty of the court to present all material issues in any case which are raised by the pleadings and the evidence. In order to test the merit of the assignment of error in this instance, it becomes necessary to determine whether the court should have charged the law relating to the doctrine of subrogation, as contended. Even if the issue as to the right of the Investors Syndicate to be subrogated was raised in the pleadings, it would not necessarily follow that it was supported by the evidence, or that the charge actually delivered by the court upon the subject was error. The plaintiffs in error say that the court should have told the jury, in effect, that if the money derived from Investors Syndicate was used to pay off and discharge the liens or loan deeds superior at the time to the loan deed under which plaintiff claims his rights, with the understanding or agreement between Investors Syndicate and Merchants & Mechanics Bank, then Investors Syndicate would be subrogated to the rights of these liens, which at the time they were paid off were superior to the lien under which plaintiff claims his rights. A careful review of the evidence convinces us that the court did not err in the instructions which he gave the jury, and that under the evidence it would have been error to charge that the right to subrogation would have arisen merely because of an understanding between Investors Syndicate and the Merchants & Mechanics Bank. An instruction to this effect would have left out of sight the lien of J. J. Thompson and have excluded it entirely

from the consideration of the jury, and would have amounted, in effect, to the direction of a verdict in favor of the defendants. The understanding that Investors Syndicate should be subrogated, to be a valid agreement, necessarily had to include all creditors of Sharpe who might have an outstanding lien which would be injuriously affected by conferring the first lien upon the Investors Syndicate. Naturally, then, the first question to be determined by the court, in charging upon the doctrine of subrogation, would be the determination of whether J. J. Thompson did not have, at the time of the alleged understanding to subrogate, a lien already attaching to the realty, which would be prior in dignity to that acquired by the money which Investors Syndicate was about to advance. Considering the evidence, the trial judge could not narrow the question by confining the understanding to the Investors Syndicate and the Merchants and Mechanics Bank, if it should appear that there was any other party who at that time had a lien upon the real estate given as security, who was not consulted. There was no evidence that J. J. Thompson was consulted, or that he agreed that Investors Syndicate should be subrogated so as to have the first lien on the house and lot in controversy. In his pleading he set up a statement of facts sufficient to show that he was not compelled to grant a priority to the new lenders who refinanced the loan made by Merchants & Mechanics Bank, otherwise than by an express agreement to that effect. It is not contended that Thompson made any such agreement. The answer as pleaded was one where the Investors Syndicate staked the security of the loan to Sharpe upon their judgment that there were no outstanding liens other than those held by the Merchants and Mechanics Bank and by Hilliard; and that, fortified by an agreement and understanding with these parties that the Investors Syndicate would be subrogated to their rights, it made the loan Sharpe had applied for.

What, then, was the standing of J. J. Thompson before the court when he filed his suit, even if this had been the first notice that the Investors Syndicate ever had that he was the claimant of a lien? Certainly, if he was entitled to a lien upon any ground, he was entitled to subject the property to his lien, instead of being restricted to a barren judgment against the maker of his notes, if the maker was insolvent or the collection of a judgment was doubtful. The turning point in the case is the question of subrogation,

and whether the defendants were entitled to be subrogated, and were indeed subrogated, to the rights of all lienholders at the time that the deeds relied upon were made to it; and the determination of this issue depends upon whether the Investors Syndicate and others had notice of the notes upon which the plaintiff's case was based. It is immaterial whether this notice be actual or constructive. Of course, if they had actual notice of Thompson's notes and of the circumstances in which these notes were executed, we do not assume that the plaintiffs in error would contend that Thompson's lien would not be superior. Was there constructive notice? Section 4530 of the Code declares: "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." The deed from Sharpe to Alverson was of record, and it bespoke as its consideration $1650 represented by 55 notes of $30 each, the first of which was not due until April 5, 1928, and it conveyed the same property which was the security in the Merchants & Mechanics Bank's deeds. It is easy to be seen now that this was a lien prior to a new encumbrance placed upon the property in favor of the Investors Syndicate, unless it should be canceled upon the record in accordance with law. Cancellation is ineffective unless it is entered by a person authorized to acknowledge receipt of the debt which is secured by the encumbrance. The Code, § 3270 provides: "Any mortgagor in this State, who may have paid off his mortgage, may present the same, together with the order of the mortgagee or transferee directing that the mortgage be canceled and record the order across the face of the record, to the clerk of the superior court of the county or counties in which the same is recorded, and such clerk shall write across the face of such record the word 'satisfied,' and the date of such entry, and sign his name thereto officially." This deed bespeaking the existence of 55 notes was canceled; but was it not the duty of the defendants to ascertain whether the cancellation was entered by one who was authorized to receive the payment? We think so. If so, then in the cancellation of the deed, viewed with the transfer of the deed from Alverson to Hilliard, it was apparent that Hilliard was the owner of but 36 notes of the 55 secured in the original deed from Sharpe to

Alverson. None of the notes were due until April, 1928; so was it the conduct of a man reasonably prudent to assume that this many notes had been paid so far in advance of their maturity? Ought it not to have led to inquiry into the condition of Sharpe, the maker, and would not inquiry have led to the discovery that none of the 19 notes had been paid? In the release or cancellation given by Hilliard, he did not claim that more than 36 of the series of notes had been paid to him; therefore he could not release more than thirty-six fifty-fifths of the security. Would not ordinary prudence have suggested an inquiry as to who should release and cancel the other nineteen fifty-fifths of the Sharpe debt? These questions were all properly submitted to the jury, and they found in favor of constructive notice. That being true, the lien of J. J. Thompson was established as a matter of law, because there was no effort to show that he ever agreed to any subrogation.

The plaintiffs in error insist that the court erred in not charging the jury that if the money derived from the Investors Syndicate was used to pay off and discharge the liens or loan deeds superior at the time to the loan deed under which plaintiff claims his rights, with the understanding and agreement between Investors Syndicate and the Merchants & Mechanics Bank, the holder of the superior liens on the property in question, then Investors Syndicate would be subrogated to the rights of such discharged liens, which were at the time they were paid off superior to the lien under which plaintiff claims his rights. As we have already indicated, this instruction would have been erroneous, because the evidence clearly shows that Thompson or those from whom he bought the notes had a lien as valid, as to priority, as those which were discharged in order to complete the transaction; and so the instruction that plaintiffs in error invoked was not adjusted to the evidence. Counsel for plaintiffs in error cite *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204), and *Merchants & Mechanics Bank* v. *Tillman,* 106 *Ga.* 55 (31 S. E. 794), as to the meaning of the term subrogation. The facts of the cases cited distinguish them from the case at bar. In the language quoted by Mr. Justice Gilbert in one of the most recent cases decided by this court, *Mortgage Guarantee Co.* v. *Atlanta Commercial Bank,* 166 *Ga.* 419 (143 S. E. 562), "We think the safer and better rule to be, and we therefore hold, that subrogation will arise only in those cases [1] where the party

claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or [2] where he had some interest to protect, or [3] where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." Under the terms fixing the third class, it is our opinion that while the plaintiffs in error may have produced evidence of such agreement with Sharpe, and Alverson, and Hilliard as would give them a right of subrogation as to them, the right certainly could not be applied to Thompson. It is urged, however, that the indorsement and transfer of the notes to Thompson and others, without transferring the loan deed with it, did not carry any security. Section 4276 of the Code provides: "The transfer of a note secured by a mortgage or otherwise conveys to the transferee the benefit of the security. If more than one note is secured and the mortgagee transfers some and retains others, the holder of the transferred notes has a preference over the mortgagee if the security is insufficient to pay all the notes." Mr. Justice Atkinson based the opinion of this court on this section of the Code, in *Berry* v. *Van Hise,* 148 *Ga.* 27 (95 S. E. 690). According to this section, as both Hilliard and Thompson were transferees, the fact that Hilliard had agreed to yield his priority of lien to the Investors Syndicate did not take away from Thompson the right to have the preference in his favor adjudged and decreed by the court. See also *Setz* v. *First National Bank of Pensacola,* 140 *Ga.* 603 (79 S. E. 540) ; *Beall* v. *Patterson,* 146 *Ga.* 233 (91 S. E. 71) ; *Shemwell* v. *Garrett,* 159 *Ga.* 222 (125 S. E. 497). A transfer of purchase-money notes carries with it the title to the security, and the land is not discharged from the encumbrance, even though the transferor transfers the note without recourse and is discharged. It was held, in *Milner* v. *Wellhouse,* 148 *Ga.* 275 (3) (96 S. E. 566) : "The transfer of a negotiable promissory note secured by a deed under the provisions of the Civil Code, § 3306, although the transfer be made by indorsement of the payee on the note without recourse upon him, will not discharge the land from the encumbrance placed upon it by the deed. *Henry* v. *McAllister,* 93 *Ga.* 667 (2) (20 S. E. 66)."

In our opinion, there is evidence in the record which would have authorized the jury to find that Investors Syndicate had actual

notice as well as constructive notice; but it was not error for the judge to refuse to instruct the jury as suggested by the oral request of counsel for plaintiffs in error. In view of the evidence as to constructive notice, we hold that there is enough evidence in the record to authorize the jury to find that the plaintiffs in error had actual notice, because the evidence of Mr. Scott Candler, that Branham, Beckham & Company were not agents of the Investors Syndicate, is nothing more than a statement of the opinion of the witness, since he did not testify to facts which would enable the court to determine, from the facts stated by him, whether the court shared in his opinion. The circumstance that Bell, the secretary and treasurer of the company, testified that in one year Branham, Beckham & Company made 300 loans for Investors Syndicate, as well as some facts disclosed by correspondence in the record, were properly submitted to the jury as circumstances which would have authorized the conclusion that Branham, Beckham & Company were in fact the agents or employees of Investors Syndicate, instead of being, as claimed, agents for the borrowers.

The court charged the jury: "These notes, gentlemen, which are being sued upon are notes which were made by Sharpe, as I say, and have reference to the title to this property." And later the court said: "and it [Investors Syndicate] had no notice of the fact that these notes were outstanding as an existing liability against this property," in explaining the contentions of movants; and later, in explaining Investors Syndicate's contentions, the court said that it contended that these notes "should not be a first lien but should be a *second* lien in so far as its loan is concerned." It is alleged that this instruction was error, because it was argumentative in that it led the jury to believe that the court believed these notes were an existing liability against this property, and that it was confusing and misleading, and the latter part was a misrepresentation of the contentions of the movant, Investors Syndicate. A mere reading shows that the charge was not argumentative. Nor was the statement of the contention of the Investors Syndicate erroneous, as it is clear from the record that the principal contention of the Investors Syndicate was that it had no notice that Thompson's notes were outstanding as an existing liability against the property upon which he was seeking to obtain a decree awarding him the property over that sought to be obtained

in behalf of the Investors Syndicate and Mrs. Hilliard. Applying a hypercritical analysis to the statement of the court that the Investors Syndicate contended that Thompson's notes "should not be a first lien but should be a second lien" in so far as its loan was concerned, this statement might be construed as a misstatement of the contentions of the defendants, which might have been detrimental. But the jury were required to consider this instruction in the light of the entire charge, and to understand the nature of the case as developed by the evidence; and inasmuch as the defendants were contending that Thompson was not entitled to a first lien but was postponed to the lien of the defendants, it was neither confusing nor misleading to the jury, because they could readily understand that what the defendants were contending was that Thompson's lien should be second to the defendants' lien; and whether Thompson had any lien at all was immaterial, for all practical purposes in this case, unless he was entitled to a first lien which was thereby made superior to that of the defendants. So that we find no harmful error in this expression. If they were contending, as the judge perhaps inadvertently stated to the jury, that they (the defendants) were entitled to a first lien, and that Thompson should not have a first lien but only "a second lien in so far as its [Investors Syndicate's] loan is concerned," the expression, though inapt, is not in fact a misstatement of the defendants' contention. As there was no other party contesting the priority of the Investors Syndicate except Thompson, the jury could not but have understood that the court meant to say that the Investors Syndicate claimed that its lien was superior to that of the plaintiff, which was the sum and substance of its contention.

The rulings upon other assignments in the amendment to the motion for a new trial are elaborated in the headnotes.

*Judgment affirmed. All the Justices concur, except Atkinson and Hines, JJ., who dissent.*

HINES, J. I feel constrained to dissent from the opinion of the majority in this case. Alverson owned a house and lot. This house and lot was encumbered by a first security deed executed by Alverson to the Merchants & Mechanics Banking & Loan Company, to secure the sum of $1,500. This house and lot was likewise encumbered by a second security deed from Alverson to said company, to secure the sum of $950. On January 20, 1925, Alverson sold

said house and lot to Robert S. Sharpe, and conveyed the same to him by deed subject to the above two security deeds. To secure a portion of the purchase-money of said lot, amounting to $1,650, represented by 55 notes for $30 each, Sharpe simultaneously executed his deed to Alverson to said house and lot. The first of said notes was made payable on or before April 5, 1928, and one each was made payable monthly thereafter. Alverson indorsed and transferred the four of said notes which first became due to J. F. Shields, to John J. Thompson the eleven of said notes which first became due after said four notes so transferred to Shields, and to T. M. Longino the four of said notes which became due immediately after the notes so transferred to Thompson. The notes so transferred by Alverson to Shields and Longino were afterwards indorsed and transferred by them to Thompson.

On January 15, 1926, Alverson indorsed and transferred the thirty-six remaining notes of Sharpe to R. L. Hilliard. All of said notes embraced an accelerating clause by which, on the failure of Sharpe to pay any one of them for a period longer than thirty days after maturity, all of said notes could be declared due, and that the right of action on all of them should at once exist. On January 15, 1926, Alverson sold, transferred, and assigned to Hilliard all his right, title, and interest in the security deed from Sharpe to him and all his right, title, and interest in and to the property described therein. The transfer recited that the last thirty-six notes described in said loan deed had been that day sold to Hilliard. This transfer was duly attested by two witnesses, one of whom was a notary public. On the same day Alverson conveyed by quitclaim deed to Hilliard all his right, title, and interest in and to said house and lot to secure the thirty-six notes of said series last falling due, so made by Sharpe to him and secured by the security deed from Sharpe. On February 5, 1927, Hilliard canceled the loan deed from Sharpe to Alverson, the cancellation being as follows: "The debt to secure which this deed is given has been paid, and the Clerk of the Superior Court of DeKalb County, Georgia, is directed to cancel the same of record." In pursuance of such direction this deed was canceled of record. Hilliard foreclosed the security deed from Sharpe to Alverson, which had been transferred to him, sold the property embraced therein, and under the sale title was made to Mrs. Hilliard, who was made a party to this suit.

Sharpe applied to Investors Syndicate, a corporation, for a loan of $2,900 with which to pay off the loans represented by the three security deeds, consisting of the two made by Alverson to the Merchants & Mechanics Banking & Loan Company, and of the one made by Sharpe to Alverson to secure the balance of the purchase-money due by him to Alverson on said house and lot, which deeds are more particularly referred to hereinbefore. Investors Syndicate, on January 19, 1927, loaned to Sharpe said sum; and Sharpe executed to it his deed to said house and lot to secure the same. The money so borrowed by Sharpe was used to pay off and discharge the loans under the two security deeds to the Merchants & Mechanics Banking & Loan Company, and the security deed given by Sharpe to Alverson to the extent of the amount of the thirty-six notes secured thereby which had been transferred to Hilliard.

Thompson filed his petition against Sharpe, Alverson, and Hilliard, in which he sought to recover judgment against Sharpe as maker and Alverson as indorser on the nineteen notes given by Sharp to Alverson as above stated, and to have the loan deed from Sharpe to Alverson foreclosed, and the house and lot thereby conveyed sold, and the proceeds of said sale paid to him and to Hilliard in accordance with their interest in said notes. By amendment Investors Syndicate was made a party defendant to this suit. Alverson was adjudged a bankrupt, and was dismissed from the case. Investors Syndicate demurred to the petition of Thompson, upon the ground that it set forth no cause of action against it. The court overruled this demurrer, and Investors Syndicate excepted and in the present bill of exceptions assigns error on that ruling.

In its answer Investors Syndicate set up that it paid off the loans secured by the two deeds from Alverson to the Merchants & Mechanics Banking & Loan Company, and the other security deed from Sharpe to Alverson, all three of which are more particularly referred to above; and that if for any reason its security deed was held to be subject to the claim of Thompson it should be subrogated to the rights of the Merchants & Mechanics Banking & Loan Company under its two security deeds, and to the rights of Alverson under the security deed from Sharpe to him. It further set up that it was understood and agreed between it and Sharp, when it made said loan to him, that it should have a first lien upon this house and lot. This defendant prayed to be subrogated to the rights of the holders of these three security deeds.

The jury returned a verdict in favor of Thompson for the amount of principal and interest due upon his notes, and found that Thompson was entitled to a first lien on the house and lot embraced in the security deed from Sharpe to Alverson. Investors Syndicate moved for a new trial; and to the overruling of the motion it excepts and assigns error.

On the trial of the case the judge wholly ignored and failed to submit to the jury the contention of Investors Syndicate that it was entitled to be subrogated to the rights of the holders of these security deeds. In one of the grounds of its motion for new trial Investors Syndicate alleges that the trial judge erred in ignoring and failing to submit to the jury its contention that it was subrogated to the rights of the holders of these security deeds, in the event that the court should hold that its security deed was inferior to the claim of Thompson. It seems to be clear and unquestionable that the trial judge erred in not submitting to the jury the contention of Investors Syndicate that it was entitled to be subrogated to the rights of the Merchants & Mechanics Banking & Loan Company under its two security deeds in preference to the claim of Thompson. Sharpe was the owner of this house and lot, subject to the two security deeds in favor of said company, and to the security deed from Sharpe to Alverson. He wished to pay off and discharge these encumbrances. He applied to Investors Syndicate for a loan of money sufficient to pay off and discharge these encumbrances. This company made the loan. The loans represented by the two security deeds in favor of the Merchants & Mechanics Banking & Loan Company were paid off with the money so borrowed; and the loan secured by the deed from Sharpe to Alverson, to secure the balance of the purchase-money of this house and lot, was paid off and discharged with the money so borrowed to the extent of 36 of the notes to secure which this deed was made, the lender being of the opinion that this was the amount due upon the loan secured thereby. The lender was of the opinion, when the security deed from Sharpe to Alverson was canceled by Hilliard, the transferee and holder thereof, that it acquired under its security deed the entire interest in this house and lot. It was the understanding and agreement between Sharpe and the lending company that the cancellation of this security deed put the complete title to the house and lot in Sharpe, and enabled him to convey the same

to the Investors Syndicate to secure the money borrowed to lift all of the encumbrances on this property. All this was done at the instance of Sharpe, who was to convey to the lender a good title to this house and lot, free from liens and encumbrances, to secure the money borrowed.

"One who advances money to pay off an encumbrance upon realty at the instance either of the owner of the property or the holder of the encumbrance, either upon the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security deed held by him, unless the superior or equal equities of others would be prejudiced thereby; and to this end equity will set aside a cancellation of such security and revive the same for his benefit." *Wilkins* v. *Gibson*, 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204). In this case the lender is not chargeable with culpable or inexcusable neglect. Subrogating the lender to the rights of the Merchants & Mechanics Banking & Loan Company will not prejudice the superior or equal equities of Thompson. Thompson will stand just where he stood before with a security subject to the two security deeds of the Merchants & Mechanics Banking & Loan Company. His legal rights under the security deed from Sharpe to Alverson will be fully protected.

"Where security given for the loan of money which is used to pay off an encumbrance turns out to be void, although the person taking it expected to get good security, he will be subrogated to the rights of the holder of the lien which the money advanced is used to pay; and in such case the person advancing the money can not be regarded as a volunteer, there being no intervening equity to prevent subrogation. This rule applies where the security fails because of partial or total want of title in the person giving it, or where it fails of its purpose because of some defect in its execution, or because of want of authority or capacity in the person executing it. The doctrine of subrogation rests upon principles of equity and justice, and is intended to afford protection to a meritorious creditor, and to prevent the sweeping away of

the fund or property from which in good conscience he ought to be paid." *Thomas* v. *Lester,* 166 *Ga.* 274 (3) (142 S. E. 870).

Under the authorities cited, and under many more which could be cited, Investors Syndicate, which paid off and discharged the loans secured by deeds or mortgages to the Merchants & Mechanics Banking & Loan Company in order to get a good title to this house and lot, these security deeds being superior to the security deed under which Thompson claims, that is the security deed from Sharpe to Alverson, was subrogated to the rights of the holder of the security deeds which were senior to that of the security deed under which Thompson claims.

In the opinion of the majority it is stated that "it is our opinion that while the plaintiffs in error may have produced evidence of such an agreement with Sharpe, and Alverson, and Hilliard, as would give them a right of subrogation as to them, the right certainly could not be applied to Thompson." It is thus suggested that Investors Syndicate should not be subrogated to the rights of the two senior security deeds, because Thompson was not a party to the agreement by which that company was to have a first lien on this property. If the agreement "is made either with the debtor or creditor," the party advancing the money to lift senior encumbrances is entitled to subrogation. In *Mortgage Guarantee Co.* v. *Atlanta Commercial Bank,* 166 *Ga.* 412, 419 (143 S. E. 562), this principle is distinctly recognized. It is there stated that the agreement may be made either with the debtor or the creditor. In this case the debtor is Sharpe and the creditor is Investors Syndicate, and the agreement was made between these two parties. It is on this ground that I dissent from the opinion of the majority. Under the facts of this case the Investors Syndicate was clearly entitled to be subrogated to the rights of the holder of the two senior security deeds, and this right is superior to the right of Thompson under the junior security deed of Sharpe to Alverson. If Thompson had agreed that Investors Syndicate should be preferred to the security deed under which he claims, there would be no necessity of resorting to the doctrine of subrogation. So in my opinion there is a grave miscarriage of justice, under the ruling of the majority on this subject. Mr. Justice Atkinson concurs in this dissent.