FEDERAL LAND BANK OF COLUMBIA *v.* BARRON *et al.*

No. 8144. JULY 15, 1931. REHEARING DENIED SEPTEMBER 17, 1931.

*Claude Christopher, Harry D. Reed,* and *Frank P. McGowan,* for plaintiff.

*W. M. Dallas* and *Jeff Hanna,* for defendants.

HILL, J. The Federal Land Bank of Columbia brought an equitable petition against Henry Aldine Barron, H. B. Barron, and the Prudential Insurance Company of America, and alleged in substance the following: Henry Aldine Barron is insolvent. On January 10, 1920, Henry Aldine Barron executed a deed to secure a debt to the Prudential Insurance Company of America, in the sum of $4,000. The deed conveyed title to certain described land in Upson County. It was recorded on January 28, 1920. On October 11, 1920, Henry Aldine Barron executed to his father, H. B. Barron, a deed to secure a debt of $5,000, this deed conveying title to the same property. It was made subject to the deed to Prudential Insurance Company, and was recorded on November 28, 1921. On October 20, 1924, Henry Aldine Barron made application to the Federal Land Bank of Columbia for a loan of $5,000, "to be secured by a first mortgage as defined in the act, on the land hereinafter described" (the same land referred to above), "to pay Prudential Insurance Company $4,000." No mention was made in the application for loan to the security deed to H. B. Barron. Henry Aldine Barron procured an attorney to prepare an abstract of title to the property. This abstract was furnished to the plaintiff. It did not show any deed to secure debt from Henry Aldine Barron to H. B. Barron. The application for the loan was approved, and the loan from the Land Bank was closed on February 20, 1925, and Henry Aldine Barron executed to the Land Bank a deed to the property to secure the loan of $5000, recorded January 9, 1925. Out of this loan $4234.06 was paid to the Prudential Insurance Company by Henry Aldine Barron in full settlement and liquidation of the deed to secure that debt, but that deed has never been canceled of record. On June 25, 1929, H. B. Barron filed suit against Henry Aldine Barron, seeking to foreclose his deed to secure debt; and said suit is in default in that Henry Aldine Barron has made no defense. In this suit H. B. Barron asks for a special judgment against the property in controversy; and unless H. B. Barron is enjoined from further pursuing this suit, he will be in position to take judgment in November, 1929. The plaintiff had no knowledge of the deed

to secure debt of H. B. Barron at the time the loan was closed with Henry Aldine Barron, and not until about two months before the filing of this petition. Plaintiff is entitled to be subrogated to all the rights, powers, and privileges of the Prudential Insurance Company of America as contained in its deed to secure debt, and is entitled to recover from the sale of the property $4234.06, with interest. The prayers are for judgment on the deed to secure debt in favor of the Insurance Company in the sum of $4234.06, with interest; that a decree be entered requiring the property to be sold and the proceeds of said sale to be applied first to the payment of this debt; for injunction to prevent the foreclosure of the loan deed of H. B. Barron; for general relief, etc. An amendment set out the name of the attorney who furnished the abstract of title to the Land Bank, and alleged that Henry Aldine Barron never repaid to the Land Bank any of the sum of $4234.06 which was paid to the Insurance Company.

H. B. Barron filed a demurrer on the grounds that the petition sets out no cause of action; that it seeks to recover upon a stale demand, and is barred by the statute of limitations, and does not seek to recover upon any written note or instrument; that the petition shows that the security deed of defendant was duly recorded; and that the record of such deed was constructive notice of defendant's rights. The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

Does subrogation apply in a case like the present? The trial court thought not, and we are of the same opinion. "There are known to the law two kinds of subrogation, legal and conventional. Ordinarily, when the term is used without qualification, legal subrogation is meant. Legal subrogation arises by operation of law, where one having a liability or a right of a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. Conventional subrogation depends upon a lawful contract, and occurs where one having no interest or any relation to the matter pays the debt of another and by agreement is entitled to the securities and rights of the creditor so paid." 25 R. C. L. 1312, § 1. See *Erwin* v. *Brooke*, 159 *Ga.* 683, 685 (126 S. E. 777), and cit. For a full discussion of the law of subrogation see *Wilkins* v. *Gibson*, 113 *Ga.* 31 (38 S. E.

374, 84 Am. St. R. 204). It appears from the petition that the plaintiff's security deed was recorded on January 9, 1925, and that at that time there was an outstanding security deed to the same land from H. A. Barron to H. B. Barron, which was recorded on November 28, 1921. In *Benenson* v. *Evans,* 162 *Ga.* 578 (2) (134 S. E. 441), it was held: "A purchaser of property who has discharged an incumbrance thereon will be subrogated to the lien of such incumbrance as against the holders of other incumbrances of which he had no notice, either actual or constructive." At the time the Federal Land Bank of Columbia made its loan and took a security deed it had constructive notice of the deed of H. B. Barron, which was executed and recorded several years previous to the security deed to the Federal Land Bank. The Land Bank was a third party and took the deed to the land with constructive notice that H. B. Barron had a deed on record of superior dignity to its own. The petition does not allege that H. B. Barron expressly agreed to see the debt of the Federal Land Bank paid; nor can it be held that by necessary implication he agreed to do so. In fact there is no allegation that H. B. Barron had any notice whatever of the transaction between the Federal Land Bank and H. A. Barron, who executed both deeds in question. The petition alleged that "on October 20, 1924, Henry Aldine Barron made application to the Federal Land Bank of Columbia for a loan of $5000, and agreed in said *application* [emphasis ours] to secure said loan of $5000 by executing to the Federal Land Bank of Columbia a first mortgage on the real property described in paragraph 4 of the petition," etc. There is no allegation that a deed was executed creating a first mortgage on the property in controversy. It is true that it is alleged that Henry Aldine Barron on February 20, 1925, before closing the loan, "executed to the Federal Land Bank of Columbia a deed to secure a debt, for the consideration of $5000, to all the same real property described in paragraph 4 of this petition, which deed to secure debt was recorded January 9, 1925," etc. But it is nowhere alleged that the deed itself created a first mortgage lien on the property.

The plaintiff relies on the case of *Merchants & Mechanics Bank* v. *Tillman,* 106 *Ga.* 55 (31 S. E. 794), where it was held that "One who advances money to pay off an incumbrance upon realty, at the instance of the owner thereof and upon the *express understanding.*

[italics ours] that the advance made is to be secured by the immediate execution of papers which will constitute a first lien on the property, is not a mere volunteer," etc. In the instant case there was no agreement express or otherwise, between the Federal Land Bank and H. B. Barron, the intervening creditor, whereby the paper executed was to constitute a first lien on the property, as in the case just cited. Besides, the Federal Land Bank was not actually, though it was constructively, aware that there was a prior recorded security deed outstanding against the property. The two cases are different, and the *Tillman* case is not in point. It appears from the record in the *Tillman* case that Martha Hatcher sold to Rollin Jefferson "the Rooney place," Jefferson assuming an outstanding indebtedness on the property in favor of Charles Larned, secured by warranty deed. Subsequently, Jefferson executed a mortgage on the property to the Merchants & Mechanics Bank, subject to the Larned deed. Later, Larned secured judgment against Rooney, had execution issued, and Jefferson paid off a part of the fi. fa., but was unable to pay the balance, and so notified the bank. The bank thereupon agreed that if a third party would pay off the fi. fa. it would consent that said third party should have a first lien on the property, to the extent of the fi. fa. Tillman, on this understanding, loaned the money to take up the fi. fa., and took what he thought was a first lien on the property. The bank undertook later to sell the land under its deed; the court enjoined the sale, and the Supreme Court affirmed the judgment. The record in the *Tillman* case, of file is in this court, discloses the facts as recited above. This state of facts does not clearly appear in the decision of that case; and in the light of these facts that case was correctly decided. There the facts were different in a main essential from the facts of the present case. In the *Tillman* case there was an *express agreement* on the part of the bank that its lien should be subordinated to the lien of the party paying off the debt. Here there is no such agreement on the part of H. B. Barron, the intervening creditor; the Land Bank being a mere volunteer, and its money not being used to protect itself, or to pay an indebtedness of H. B. Barron. The Land Bank loaned the money to H. A. Barron, which was used to pay off a prior incumbrance in favor of the Prudential Life Insurance Company; it had the title to the land examined, and failed to note the existence of the

recorded security deed from H. A. Barron to H. B. Barron; and took a security deed to the property. Here the Land Bank had constructive notice of the existence of the deed of H. B. Barron, and is bound thereby. Neither is the case of *Wilkins* v. *Gibson,* supra, in point. There the intervening creditors, Wilkins, Neely & Jones, agreed that their lien should be subordinated to the lien of the lending creditor. See *Investors Syndicate* v. *Thompson,* 172 *Ga.* 203 (158 S. E. 20).

Where there are several contractual liens on the same property, all duly recorded, neither the property owner nor the senior lien-holder can contract a new lien to take the rank of first lien in disregard of the rights of the existing lienholders. To permit such would be to nullify the recording acts. Suppose A mortgages land to B, and subsequently mortgages the same land to C. Both mortgages are duly recorded. B's mortgage for $10,000 becomes due and is unpaid. At this time the land can be sold for enough to pay both B and C. But A and B agree to avoid the sale of the land, disregarding C's rights, and obtain a mortgage loan from D, and from the proceeds pay B, the new mortgage to run five years, and agree, no consent of C being obtained, that the new mortgage shall be the first lien. If they can legally do this, they may destroy the value of C's lien, and when D's mortgage matures it may be greatly decreased, and the land may be worth only enough to pay D. Moreover, if one new first lien may be created, why not an indefinite number, by means of which C may be entirely defeated of any opportunity to collect? It may be said that he has the right to pay up the first lien and take a transfer; but suppose the junior lien is a small loan, and the senior is large, and the junior lienholder is unable, from lack of means, to retire the senior lien. The junior contract was executed because that creditor was willing to await the maturity of the then existing senior lien, but he was not willing, and did not agree, that his debtor without his consent should continue to create first liens without regard to the rights of liens already existing, and of which all parties had notice, constructive or actual. See *Mortgage Guarantee Co.* v. *Atlanta Com. Bank,* 166 *Ga.* 412, 415 (143 S. E. 562), where it was said by Mr. Justice Gilbert: "While valid against persons executing them, security deeds are postponed to all liens created or obtained and recorded prior to the actual record of the deed, unless the younger deed is

created by contract and the party receiving it has notice of the prior recorded deed." So we are of the opinion that plaintiff's petition fails to show that the doctrine of subrogation, either legal or conventional, applies to a case like the present; and the learned trial judge did not err in sustaining the general demurrer and in dismissing the petition. See Harris' Law of Subrogation, 1889, 508.

*Judgment affirmed. All the Justices concur, except Hines, J., dissenting.*

### ON MOTION FOR REHEARING.

HILL, J. In *Wilkins* v. *Gibson,* 113 *Ga.* 31, 35 (supra), it was stated in the opinion by Mr. Justice Cobb: "Subsequently, the notes given by W. I. Steiner to A. L. Richardson having become due, she applied to Lawson & Scales, loan brokers, and engaged said firm to negotiate a new loan in order that she might pay up and discharge her indebtedness to Richardson, who was urging a settlement of the same. Upon being informed that no new loan could be secured if there were any existing or uncanceled liens against the property offered as security, W. I. Steiner, knowing that subsequently to the deed to Richardson such liens had been given to Wilkins, Neely & Jones, immediately applied to them to assist her in perfecting the necessary arrangement to secure the new loan. To this they readily consented, and, being anxious that Mrs. Steiner should make arrangements with Richardson so that she could continue her farming operations, out of which they hoped to realize their debt, accompanied W. I. Steiner's husband, who was acting for her, to the office of Lawson & Scales, and in the presence of the members of this firm stated that they thought all their liens on the property had been canceled, but, if they were not, they would promise and agree to cancel and extinguish all their liens on the property in question, if Lawson & Scales would negotiate the loan for Mrs. Steiner. Upon the faith of this agreement, and upon the assurance of Wilkins, Neely & Jones that they held no liens or other papers against the property, application was made for a loan of $6,000, the same being sufficient to pay the debt due Richardson, which amount was advanced by petitioner to W. I. Steiner and by her paid to Richardson in extinguishment of his debt, and his deed was then and there marked canceled and satisfied upon the record." Thus it appears that Wilkins, Neely & Jones, the intervening creditors, did agree with the lender that their lien,

if any, would be canceled, and would not stand in the way of the lending creditor. The court said, in the *Gibson* case: "As the jury found in favor of the defendants on the issues as to novation and estoppel, it will be unnecessary to advert to these branches of the case. On these the evidence was directly conflicting, and we shall assume, for the purposes of this opinion, that the jury have arrived at the truth of the case with respect to them." Even if the case of *Merchants & Mechanics Bank* v. *Tillman,* 106 *Ga.* 55 (supra), is in point, it was decided by only four Justices, two being absent, and is not controlling, as a precedent.

Learned counsel for plaintiff, in their brief on the motion for rehearing, make this statement; "In the case at bar the Federal Land Bank's loan was for $5,000, and by its terms was to run for 33 years. But H. B. Barron could have relieved the land from the lien of the loan deed executed to the Federal Land Bank *at any time* by paying to the bank the amount of the Prudential Insurance Company loan, $4,000 and interest." The record shows that the interest was only $234.06. This statement of counsel furnishes a strong illustration, and reason against subrogation, under the facts of this case. In the first place, it shows that the debt due the land bank is not the same debt due the Prudential Insurance Company, which was $4,000, and interest, $234.06; whereas the new debt contracted with the Federal Land Bank was $5,000, and interest. In the second place, the debt due the Federal Land Bank was to run for 33 years, whereas the debt due the Prudential Life Insurance Company was to run only five years. This 33-year debt would practically debar the intermediate creditor (H. B. Barron) from foreclosing his second mortgage; for no one would buy a piece of property under a second mortgage when there was a prior 33-year mortgage on the same. And to wait 33 years to foreclose would be a practical denial of justice and due process of law. And this, in the face of the fact that the second mortgagee had never agreed to such an arrangement. Such a rule would in many cases destroy the liens of the holders of second mortgages. There is nothing in the record, or in the law, so far as we are advised, to authorize the statement that "H. B. Barron could have relieved the land from the lien of the loan deed executed to the Federal Land Bank *at any time* by paying to the bank the amount of the Prudential loan, $4,000 and interest." If the Federal Land

Bank had what they considered a good security deed for the loan of $5,000 to run for 33 years, with interest, it is hardly probable that they would accept $4,000 and interest, $234, for such debt "*at any time.*"

In Harris' Law of Subrogation, 508, it is stated: "In the absence of some agreement or stipulation which will amount to conventional subrogation, a person who pays off an encumbrance in which he has no interest will not thereby entitle himself to be subrogated to the rights of the prior encumbrancer, especially against intervening liens. So if the money is loaned to the debtor to pay off purchase-money for land, discharging the vendor's equitable lien, and is so applied, the lender will not ordinarily be subrogated to the vendor's lien. And the same rule applies where the money is loaned to the debtor to pay off a judgment, which is a lien on his land; it does not subrogate the lender to the place of the judgment creditor, unless so agreed and understood. If the debt is paid at the instance of the debtor, and under circumstances that would induce the belief that the parties contemplated that the party paying should take the securities held by the creditor, it may perhaps have that effect, as against the debtor; but not against one interested in the property held by the creditor, when paid by a stranger, unless, however, the money was advanced as a purchase, and not as an extinguishment of the debt. But the stranger may, by conventional subrogation, which must be an agreement with the creditor or the debtor, avail himself of such securities."

*Rehearing denied.*