## McCOLLUM *et al.* v. LARK *et al.*

No. 12460. NOVEMBER 17, 1938. REHEARING DENIED DECEMBER 3, 1938.

*Henry G. Howard* and *J. H. Barnett,* for plaintiffs.

*Fleming & Fleming,* for defendants.

DUCKWORTH, Justice. John McCollum and the Home Owners Loan Corporation brought suit in Richmond County against Moses Lark, a non-resident of the State, and the sheriff and his deputies of Richmond County, seeking to restrain a sale of certain realty levied on by virtue of an execution held by Lark against McCollum. The facts alleged are substantially as follows: McCollum is the owner .

of certain described realty in Augusta, Richmond County, as evidenced by a warranty deed from one Williams, dated March · 18, 1929, and duly recorded. On February 4, 1933, Lark made affidavit and had issued a distress warrant which was duly levied, March 2, 1933, on the real estate conveyed by the deed above mentioned. Entry of service and levy was made on the general execution docket on March 10, 1933. On March 18, 1933, McCollum filed his affidavit of illegality of the levy of the distress warrant, on the ground that the full sum distrained for was not due. He filed also a claim setting up that the property levied on was held jointly by himself and his wife and children. Lark filed a motion to strike the affidavit of illegality, on several grounds. The case coming for a hearing, and it being agreed by the counsel for the plaintiff and the defendant that all defense papers in the within case were withdrawn, a consent judgment was rendered in favor of Lark against McCollum, in a lesser amount than the sum sued for. This judgment was dated May 25, 1933. On May 31, 1933, an execution issued on the judgment was recorded on the general execution docket. On September 7, 1933, this execution was levied on the real estate in question. On October 4, 1933, one Saxton filed a claim setting up that said property was not the property of the defendant in execution, but was only the property of the defendant in execution subject to a general contractor's lien for materials furnished and services rendered in the construction of a dwelling-house on said property, in favor of Holloway and Saxton, the lien being dated March 13, 1933 and recorded March 18, 1933. On December 11, 1933, the court entered judgment in the claim case, finding in favor of the claim and dismissing the levy. This contractor's lien, within ninety days from the date of furnishing the last materials and services and within nine months from the filing of the lien, was foreclosed by instituting suit in the superior court of Richmond County, returnable to the November term, 1933. Judgment was obtained January 16, 1934, and an execution issued thereon was recorded on the same date. This judgment and execution were marked paid and satisfied on May 21, 1934, and satisfaction entered on the general execution docket June 19, 1934, the payment having been made from funds borrowed by McCollum from the Home Owners Loan Corporation to which McCollum, on May 21, 1934, had executed a security deed to secure the loan, which

deed was recorded June 18, 1934. The covenants in this deed material to the case appear in headnote 5. The petitioners contend, for various reasons under the facts alleged, that the contractor's lien is a prior lien on the property, and comes ahead of that held by Lark for rent. The prayers were for injunction restraining the sale under the levy of the execution for rent, and for general relief. Demurrers to the petition were interposed by Lark, on the grounds that under the facts alleged the lien of Lark was superior to that of Holloway and Saxton, and that no facts were alleged showing that the Home Owners Loan Corporation was subrogated to the rights of Holloway and Saxton, and that the allegations do not constitute a valid case in law or in equity. The court sustained the demurrers, and the petitioners excepted.

While, as said in *Colonial Hill Co.* v. *Mortgage Bond &c. Co.,* 174 *Ga.* 204, 208 (162 S. E. 272), "it can serve no useful purpose to discuss in detail the long list of decisions rendered by this court involving the subject of subrogation. Many of them contain elaborate opinions. Each case is founded upon its own facts, and in comparing them the dividing lines in some instances are difficult to trace," yet we do think that it would serve a useful purpose if we should discuss and attempt to clarify some of the propositions stated in some of the cases which are directly in conflict with the rulings stated in the headnotes in the instant case, although it may be that the cases themselves, in so far as the judgment is concerned, may be distinguished on their facts. The cases referred to are *Investors Syndicate* v. *Thompson,* 172 *Ga.* 203 (158 S. E. 20) ; *Federal Land Bank of Columbia* v. *Barron,* 173 *Ga.* 242 (160 S. E. 228) ; *Bank of Canton* v. *Nelson,* 173 *Ga.* 185 (160 S. E. 232), held controlled by the principles ruled in the *Barron* case, supra; *Colonial Hill Co.* v. *Mortgage Bond &c. Co.,* supra. In *Investors Syndicate* v. *Thompson,* supra, the Investors Syndicate, one of the defendants, which claimed subrogation to the rights and remedies of the Merchants & Mechanics Bank, the liens and loan deeds of which it had paid off, in its motion for new trial complained that the court erred in failing to charge the jury to the effect that if the money derived from the Investors Syndicate was used to pay off the liens or loan deeds superior at the time to the loan deed under which Thompson claimed his rights, with the understanding or agreement between Investors Syndicate and the Merchants &

Mechanics Bank, the holder of the superior liens on the property involved, then Investors Syndicate would be subrogated to the rights of these discharged liens, which at the time they were paid off were superior to the lien under which the plaintiff claimed his rights. The court held "that under the evidence it would have been error to charge that the right to subrogation would have arisen merely because of an understanding between Investors Syndicate and Merchants & Mechanics Bank," and that "the trial judge could not narrow the question by confining the understanding to the Investors Syndicate and the Merchants and Mechanics Bank, if it should appear that there was any other party who at that time had a lien upon the real estate given as security, who was not consulted. There was no evidence that J. J. Thompson [who had a lien prior to the deed to Investors Syndicate, but inferior to those of the Merchants and Mechanics Bank which were paid off and canceled by Investors Syndicate] was consulted, or that he agreed that Investors Syndicate should be subrogated so as to have the first lien on the house and lot in controversy." The court then stated that the determination of the issue "whether the defendants were entitled to be subrogated, . . depends upon whether the Investors Syndicate . . had notice of the notes upon which the plaintiff's case was based," and held that inasmuch as the Investors Syndicate had constructive notice of the lien of Thompson, his lien "was established as a matter of law, because there was no effort to show that he ever agreed to any subrogation." The cases of *Wilkins* v. *Gibson*, 113 *Ga.* 31, 42, and *Merchants and Mechanics Bank* v. *Tillman*, 106 *Ga.* 55, were said to be distinguishable on their facts; and it was held that the Investors Syndicate having only made an agreement with the creditor paid, did not come within the rule that one is subrogated "where he advanced the money under an agreement express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." Justices Hines and Atkinson dissented from the majority opinion. Whether or not the result reached in the case was correct because there was no proof that the deed to Investors Syndicate purported to convey a title free and clear of liens, or that Investors Syndicate had made or caused to be made a search of the records and failed to find the record of Thompson's lien, it is not necessary to decide. We are

concerned here solely with the import of the rulings, and not with the correctness of the judgment reached.

In *Federal Land Bank of Columbia* v. *Barron*, supra, the facts stated show that the Federal Land Bank, upon application of Henry Barron for a loan to be secured by first mortgage on certain described realty, and to pay the Prudential Insurance Company $4000 evidenced by a security deed duly recorded, took a deed from Henry Barron to secure a loan for $5000, which deed was duly recorded. Out of this loan the sum of $4234.06 was paid to the insurance company in full settlement and liquidation of its security deed, but the deed was not canceled of record. Subsequently H. B. Barron, to whom Henry Barron had executed a deed to secure a debt, subject to the insurance company deed but prior by several years in execution and record to the deed held by the Federal Land Bank, filed suit against Henry Barron, seeking to foreclose his deed. The abstract of title procured by Henry Barron and furnished to the Federal Land Bank at the time it made its loan failed to show this deed executed to H. B. Barron. The bank brought suit against Henry Barron and H. B. Barron, seeking to enjoin the suit instituted by H. B. Barron against Henry Barron, and to have itself declared subrogated to the rights of the insurance company under the loan deed executed to it which had been paid. A demurrer to the petition of the bank was sustained. In the opinion by this court it was said: "In *Benenson* v. *Evans*, 162 *Ga.* 578 (2) (134 S. E. 441), it was held: 'A purchaser of property who has discharged an incumbrance thereon will be subrogated to the lien of such incumbrance as against the holders of other incumbrances of which he had no notice, either actual or constructive.' At the time the Federal Land Bank of Columbia made its loan and took a security deed it had constructive notice of the deed of H. B. Barron, which was executed and recorded several years previous to the security deed to the Federal Land Bank. The Land Bank was a third party and took the deed to the land with constructive notice that H. B. Barron had a deed on record of superior dignity to its own. The petition does not allege that H. B. Barron expressly agreed to see the debt of the Federal Land Bank paid; nor can it be held that by necessary implication he agreed to do so. In fact there is no allegation that H. B. Barron had any notice whatever of the transaction between the Federal Land Bank and H. A. Bar-

ron, who executed both deeds. . . There is no allegation that a deed was executed creating a first mortgage on the property in controversy." The court then distinguished the case of *Merchants & Mechanics Bank* v. *Tillman,* supra, after reciting the facts purportedly disclosed by the record in that case, in the following language: "In the *Tillman* case there was an *express agreement* on the part of the bank [the intervening creditor] that its lien should be subordinated to the lien of the party paying off the debt. Here there is no such agreement on the part of H. B. Barron, the intervening creditor." The case of *Wilkins* v. *Gibson,* supra, was also distinguished in the following language: "Neither is the case of *Wilkins* v. *Gibson,* supra, in point. There the intervening creditors, Wilkins, Neely & Jones, agreed that their lien should be subordinated to the lien of the lending creditor." Justice Hines dissented, the grounds of his dissent appearing in *Bank of Canton* v. *Nelson,* supra, which later case the court held was controlled by the principles ruled in the *Barron* case. The decision in the *Barron* case was apparently based on the ruling quoted in the opinion from *Benenson* v. *Evans,* 162 *Ga.* 578 (134 S. E. 441). The second headnote of both the *Barron* case and the *Benenson* case is composed of practically the same quotation, which was no doubt taken from the same quotation contained in *Ragan* v. *Standard Scale Co.,* 128 *Ga.* 544, 546 (58 S. E. 31), from 27 Am. & Eng. Enc. L. (2d ed.), 248. In the *Ragan* case it was held: "Where one purchases a certain piece of property against which there are two recorded mortgages, and pays off the senior mortgage out of the purchase-money, and it is cancelled, equity will not, in the absence of an agreement between the parties to that effect, subrogate him to the· rights of the senior mortgagee, as against the other incumbrancer, whose lien was subject to the senior mortgage but prior to the purchase." In the opinion it was said: "When the Standard Scale Company purchased the property in controversy from Corley and paid off the mortgage to the bank, it did so with constructive, if not actual notice that Ragan held another mortgage against the same property; and it is not contended that the Scale Company made any agreement with either the debtor or the creditor that it was to be subrogated to the rights and priorities of the bank. Under the rule above announced, it follows that the court erred in holding that the plaintiff was subrogated to the lien of the bank as against

the mortgage held by Ragan." This was tantamount to a ruling that if the Standard Scale Company had had an agreement with either the debtor or the bank that it would be subrogated to the rights of the bank, such agreement would have been sufficient and no agreement with the intervening creditor would be necessary.

To the same effect see *Brown* v. *Hooks,* 133 *Ga.* 345 (65 S. E. 780); *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604 (123 S. E. 883, 37 A. L. R. 378); *McCowan* v. *Brooks,* 113 *Ga.* 532 (39 S. E. 115). As in the *Ragan* case, it was stated in the opinion in the *Benenson* case, "In order for Benenson to assert a valid claim of subrogation to the rights of Forman, it would be necessary that he have an express contract to that effect either with Clark [the debtor] or Forman, or that he was compelled to pay off the former lien in order to protect an existing valid lien of his own; but, as already pointed out, no such contract existed, and therefore he can not be subrogated to the rights of Forman." Justices Beck and Hines dissented on the ground that subrogation arose in that case even in the absence of an "express" agreement. A discussion of that feature of the case is not necessary, because here we do have an express agreement. We do not deem it amiss to call attention to the fact that in the *Barron* case there was no express agreement with either the debtor or the creditor whose debt was paid, although the decision was based on the ground that no agreement had been made with the intervening creditor. Whether the *Barron* case is distinguishable on that ground we do not decide. It is sufficient to say that neither *Standard Scale Co.* v. *Ragan,* nor *Benenson* v. *Evans,* supra, is authority for the ruling that constructive notice of an intervening lien is sufficient to defeat subrogation unless there is an express agreement with the intervening creditor that his lien shall be subordinate to the lien taken by the new creditor, or that the new creditor shall be subrogated to the rights and remedies of the creditor paid. However, it might be argued that these two decisions, in so far as they may be said to hold that an agreement with the debtor or creditor paid is sufficient to overcome constructive notice of the intervening lien, may contain obiter dicta if the cases of *Wilkins* v. *Gibson* and *Merchants & Mechanics Bank* v. *Tillman,* supra, are not authority for the ruling that an agreement so made with the debtor or creditor is sufficient. At this point we desire to call attention to *Peagler* v. *Davis,* 143 *Ga.* 11 (84 S. E.

59), wherein the *Ragan* case was cited as authority for the ruling that where a mortgagor and mortgagee agreed with a purchaser of the mortgaged premises that he would be subrogated to the rights of the mortgagee if he paid the mortgage out of the purchase-money, and this was done and the mortgage canceled of record, the purchaser, "by virtue of the agreement made with the mortgagor," was entitled to be subrogated to the rights and remedies of the mortgagee as against a judgment creditor whose execution was recorded on the same day the deed to the purchaser was given, and before the cancellation of the mortgage, but of which judgment the purchaser had no notice. It is true, as stated in the *Barron* case, that there was evidence of agreements made by the intervening creditor in both *Merchants & Mechanics Bank* v. *Tillman* and *Wilkins* v. *Gibson,* supra. In the first named case, Tillman was the party claiming subrogation. The record in that case does not disclose (as stated in *Federal Land Bank* v. *Barron,* supra), that Tillman, on the understanding that the bank "agreed that if a third party would pay off the fi. fa. it would consent that said third party should have a first lien on the property," loaned the money to take up the fi. fa. On the contrary it appears from the record in that case that Tillman did so in reliance upon an agreement by Jefferson, the debtor, that Tillman would have first lien on the property to the extent of the amount of the advance to pay the fi. fa. An examination of the decisions cited, the rulings stated, and the discussion in the case and the arguments upon which the conclusion was reached convince us that the case was decided upon the theory of an agreement made with the debtor, and not upon any agreement on the part of the intervening creditor.

This court, in a full-bench decision, *Wilkins* v. *Gibson,* supra, likewise construed the decision in the *Tillman* case. It was there said: "According to these authorities [previously mentioned], this agreement may be made with the person paying the debt by either the creditor or the debtor. . . The doctrine has been recently applied by this court in such a case," citing the *Tillman* case. Further it was said: "In *Merchants Bank* v. *Tillman* . . the law with reference to the doctrine of conventional subrogation was thoroughly considered, and the conclusion was reached that 'One who advances money to pay off an incumbrance upon realty, at the instance of the owner thereof, and upon the express understanding

that the advance made is to be secured by the immediate execution of papers which will constitute a first lien on the property, is not a mere volunteer; and in the event the new security thus taken turns out to be defective, the person parting with his money on the faith thereof, if not chargeable with culpable and inexcusable neglect in the premises, will be subrogated to the rights of the prior incumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby.' It appeared in that case that the debtor made an express agreement with the person who advanced the money to pay off the incumbrance that he should have a first lien on the property. . . An agreement of the character just referred to was held, in effect, to be an agreement that the second creditor was to be subrogated to the rights of the creditor whose debt had been discharged with the money advanced. Viewed in the light of the authorities, as well as in that of sound equitable principles, that decision is manifestly right. But further than that we are not prepared to go." However the very case (*Wilkins* v. *Gibson*) from which the above quotation is taken is said to be based itself upon the fact of an agreement with the intervening creditor. In that case it appeared from the allegations of the original petition that Mrs. Steiner, the debtor, upon the faith of an agreement of Wilkins, Neely & Jones, the intervening creditor, that "they thought all their liens on the property had been canceled, but, if they were not, they would promise and agree to cancel and extinguish all their liens on the property in question" if the loan were negotiated, made application for a loan and secured the loan by a deed, which loan was used to pay off the lien of one Richardson, which was a lien prior to that of Wilkins, Neely & Jones. By amendment "to enlarge the issues" Gibson, the plaintiff, set up that "This payment was made at the request of Mrs. Steiner, and her purpose in procuring the loan was to pay the notes held by Richardson. On account of the facts aforesaid, the plaintiff . . is subrogated to all rights and priorities that Richardson had at that time." In the opinion it was stated: "Three questions were submitted to the jury by the court: (1) Whether the security deed held by Wilkins, Neely & Jones had been canceled and satisfied of record by a novation in taking mortgages on the same propery. (2) If the mortgages to Wilkins, Neely & Jones, subsequent to the deed relied on by them, did not

constitute a novation, whether they had agreed that, if the money was advanced by Gibson for the purpose of paying off the Richardson debt, they would waive their claim as against Gibson's debt. (3) Whether Gibson was subrogated to the rights of Richardson, on the theory that he had paid the money with the understanding that he was to have a first lien on the property. The jury found in favor of the defendants on the question of novation, *and that they had not agreed to waive their rights as against Gibson;* but found in favor of Gibson on his claim of subrogation." A cross-bill of exceptions, by Gibson, assigned error on rulings on demurrer. Just preceding a discussion of the questions raised the court said: "As the jury found in favor of the defendants on the issues as to novation and estoppel, it will be unnecessary to advert to those branches of the case." After a lengthy discussion of the question of subrogation, the court, in ruling on an assignment of error on the charge of the court, said: "The judge instructed the jury, in effect, that if the plaintiff advanced the money to pay off the debt due Richardson, by request of Mrs. Steiner, and the money was used for that purpose, this, without more, would make a case for the application of the doctrine of subrogation. In order to recover on this theory, the plaintiff must show a state of facts from which either an express agreement or one arising by necessary implication will appear to have been made between him and Mrs. Steiner, or Richardson, . . that the plaintiff was, so far as the dignity of his lien was concerned, to stand in the place of Richardson. It also results from the above that the amendment offered by the plaintiff claiming subrogation was subject to the demurrer filed thereto, for the reason that it is nowhere alleged therein that the plaintiff had an agreement of any character with Mrs. Steiner or Richardson, whereby he was to be substituted to the latter's rights." Then immediately following, on the question of notice of the intervening lien, it was said: "The defendants, however, contend that even if the evidence justified a finding that an agreement was made between Mrs. Steiner and Gibson that he was to be subrogated to the rights of Richardson, it would be inequitable and unjust to apply the doctrine in favor of Gibson, because he was guilty of inexcusable negligence; and the court was requested to charge that Gibson would not be entitled to subrogation if he was guilty of 'inexcusable negligence' in failing to know or to act on his knowl-

edge of the deed to Wilkins, Neely & Jones. It is undoubtedly true that if, on account of the gross negligence of the lender, the rights of intervening lienholders are prejudiced, and they are placed in a worse position than they would have been had the debt not been paid, the lender will not be entitled to subrogation. When the defendants, the holders of the intervening liens, took their mortgages, the lien of Richardson was in existence and superior to theirs, and of this fact they had knowledge. To substitute Gibson for Richardson would apparently place them in no worse position than they were before. . . The fact that Gibson may have known of the existence of the mortgages of defendants, which were executed before the cancellation of the deed to Richardson, will not defeat his right to subrogation, provided, of course, he had an agreement for subrogation. If he had such an agreement, he simply stands in equity in the place of Richardson, so far as the dignity of his debt is concerned. On account of this agreement equity simply assigns this security to him." It becomes apparent from the above excerpts from *Wilkins* v. *Gibson,* that the allegations of an agreement with the intervening creditor, upon which estoppel was based in the original petition, were found not to be true by the jury, and were for that reason not considered by the court. The sole circumstance dealt with by the court in that case, in so far as any agreements were concerned, was the circumstance of an agreement had with either the debtor or creditor whose claim was paid. So we conclude that *Wilkins* v. *Gibson* and *Merchants & Mechanics Bank* v. *Tillman,* supra, are not distinguishable for the reasons stated in *Federal Land Bank* v. *Barron, Investors Syndicate* v. *Thompson,* and *Coloniel Hill Co.* v. *Mortgage Bond &c. Co.,* supra, in which the distinction made in the *Barron* case was approved; and that *Ragan* v. *Standard Scale Co., Benenson* v. *Evans, Citizens Mercantile Co.* v. *Eason,* and *Peagler* v. *Davis,* supra, are authority for the rulings that an agreement for subrogation, made with either the debtor or the creditor, is sufficient to overcome constructive notice of the intervening lien; and any ruling or intimation to the contrary in three cases previously referred to is hereby disapproved. It follows that where a lender, pursuant to a contract with the debtor, in which the debtor agrees and does attempt to convey to the lender a first lien upon realty, and agrees that the lender shall be subrogated to the rights and remedies of any creditor whose lien he discharges, does

discharge and has marked canceled of record a lien superior to his conveyance from the debtor, without actual but only constructive notice of another lien of record, the lender is subrogated to the creditor whose lien he discharges, and may revive the lien and enforce the same against the property when to do so would not prejudice the rights of the intervening lienor who has done nothing to change his position in reliance upon the cancellation of the lien paid. The cases of *Wilkins* v. *Gibson,* and *Peagler* v. *Davis,* supra, were cited approvingly in a full-bench decision in *Flournoy Plumbing Co.* v. *Home Owners Loan Corporation,* supra, wherein the facts were on all fours with the facts of the instant case, and in which the intervening lien was of record at the time the party claiming subrogation made his agreement with the debtor (identical to that in the instant case), and paid off the creditor holding a lien superior to that of the intervening lien. None of the cases the rulings in which we have disapproved in so far as they pertain to the necessity of an agreement with the intervening creditor were full-bench decisions. We must follow the *Flournoy* and *Wilkins* decisions, which in our opinion state the sounder principles of law relating to subrogation as against an intervening lienholder. The facts of this case do not raise the question of actual notice of the intervening lien, and no opinion is expressed herein on what effect such notice would have. *Judgment reversed. All the Justices concur.*