WILLIS, administrator, *et al. v.* CAPEL.

No. 9086.   FEBRUARY 21, 1933.

*Arthur Lewis,* for plaintiffs in error.. *L. P. Goodrich,* contra.

PER.CURIAM. J. W. Capel brought an equitable petition against P. A. Willis, administrator of the estate of Mrs. Willie R. Morgan, and others, alleging in substance that on April 24; 1912, Mrs. Morgan borrowed a sum of money from American Investment & Loan Co., and executed her note and deed to described land as security; that that loan was subsequently foreclosed and reduced to judgment; that in July, 1919, Mrs. Morgan borrowed from the petitioner $2500 for the purpose of paying off that judgment; that it was understood and agreed between petitioner and Mrs. Morgan that if he advanced the money to pay off the first-mentioned loan, the security deed offered to him was to be a first lien on the property, and that petitioner was to be subrogated to all of the rights of the American Investment & Loan Co. He prayed for judgment for the unpaid balance due him on the note. By amendment it was alleged that the deed from Mrs. J. H. Morgan to J. H. Morgan, guardian, recorded in the clerk's office of Pike County in deed book 10, page 35, was a voluntary deed without consideration, that petitioner had no knowledge of said deed at the time he made the loan; and that his said loan deed was superior to the voluntary conveyance. No mention was made in the petition of the sale and reinvestment of the property of the defendants, then minors, by which defendants claim the remainder interest in the property here involved. The court overruled a demurrer to the petition as amended, and overruled a motion for new trial after verdict in favor of the plaintiff.

Headnotes 1 and 2 do not require elaboration.

One ground of the motion for new trial complains that the court erred in withholding from the jury material evidence as follows: Deed from J. H. Morgan as guardian of Harry, Ruth, Eloise, and Vincent Morgan, minors, to G. D. Dominick, dated July 22, 1912, and recorded July 29, 1912, conveying a remainder interest of said minor children in fifty acres of land of land lot 193 in the 9th district of Pike County, Georgia, and being part of the Barker estate inherited by said minor children under the will of their grandfather; said deed reciting that it was made pursuant to an order of the judge of the superior court of said county, dated October 28, 1911, authorizing a private sale of said land by J. H. Morgan as guardian, for the purpose of reinvestment in a two-acre tract of

land in Molena, Georgia, and that said sale was made in consideration of the sum of $2000. Movants contend. that the "deed showed that the property owned by them was conveyed by their guardian, and that it purported that it was conveyed .pursuant to an order of the judge of the superior court; that .said order had directed the sale of said property and the reinvestment of the proceeds of the sale thereof in the two-acre town lot which is the subject of this litigation. Movants contend that the money paid by Dominick for said deed was paid by the guardian of said minor children for the deed from their mother to them, conveying a remainder interest in the town lot, and that said deed should have been admitted in evidence in support of their contention that the deed from the mother to the children was not a voluntary conveyance, as contended by the plaintiff." The judge attached the following note to this ground: "The undisputed evidence was that the deed referred to was a deed to secure a debt, and that the debt has been paid. On objection to its admission in evidence, for this and other reasons, the objections were sustained and the deed excluded." The reasons stated in this note are not sufficient to justify the exclusion of the evidence. Even if the deed was one to secure a debt, it purported to be in pursuance of an order of court for the sale and reinvestment of the property of the minors, and it was material evidence tending to show the source from which the minors obtained the fund to be paid to the mother for the remainder interest in her town property as a reinvestment of the fund pursuant to the order of court. Had that deed been admitted in evidence, the evidence as a whole would have demanded a verdict for the defendants. The contract under which the petitioner claims was that of lender and borrower, evidenced by a security deed from the mother of defendants to described land. On October 30, 1911, Mrs. Morgan, mother of the defendants, conveyed the remainder interest in the land to her children, the defendants. This deed was not recorded until March 25, 1915. This deed was made pursuant to an order of court providing for a sale of property of the minor children of Mrs. Morgan and a reinvestment of the proceeds derived from such sale in the purchase of a remainder interest in Mrs. Morgan's property, the property herein involved. On April 24, 1912, Mrs. Morgan executed a security deed, recorded March 10, 1912, to American Investment & Loan Co., purporting to convey the entire interest in the land as security for a

loan. This deed, because of the delay in recording the first mentioned deed, took precedence over it. On July 14, 1919, Mrs. Morgan, mother of the defendants executed a deed to the petitioner, Capel, to secure a loan of money. This deed was recorded January 26, 1920. Capel at the time of making this loan had no interest in the property to protect, and was a mere volunteer in making the loan to Mrs. Morgan; therefore no equitable subrogation arose because of said transaction. There was no conventional subrogation, because at the time Capel entered into his contract with Mrs. Morgan, in consequence of which Mrs. Morgan executed her security deed, she had parted with all of her interest in the land except a life-estate, by means of her deed to J. H. Morgan, guardian for her children, recorded in 1915, about four years prior to the transaction with petitioner. Mrs. Morgan was therefore powerless to make any binding contract with Capel, further than to bind her life-estate. The order of court for reinvestment of the minors' property was itself notice to Capel. Her deed conveying the remainder interest of her children was of record, and was constructive notice to petitioner, not as a lien which could by agreement of Mrs. Morgan be made subject to or junior to another lien, but it constituted actual outstanding title in the defendants. The life-estate terminated before the bringing of this suit. Therefore the court erred in rejecting the deed from evidence.

The foregoing rulings dispose of the entire case, and it is unnecessary to rule on other assignments of error, some of which would not occur again if there should be another trial.

*Judgment reversed.* *All the Justices concur, except Hill and Bell, JJ., who dissent.*

Hill, J., dissenting. It appears that in 1912 and 1913, before any of the deeds referred to in the petition were put on record, Mrs. Willie R. Morgan procured a loan on the house and lot in the town of Molena, and gave a security deed thereto to the American Investment & Loan Company. This loan being in default in 1915, the loan company brought suit against Mrs. Morgan, to the June term, 1915, of the city court of Zebulon and obtained a judgment. It appears from the evidence that Mrs. Morgan then applied to W. M. Jordan for assistance to prevent the sale of the house and lot. Mr. Jordan testified: "Mrs. Willie R. Morgan came to see me concerning this loan, prior to the time this deed to Capel was made;

she was about to lose the place through foreclosure of a paper in favor of the loan company that had been against it, and she came to me in order to help get the money to save it. There was some little litigation that started there, and I think it was finally in the hands of the sheriff as receiver for the property. Mrs. Morgan asked me to see if I could help her get the money from Mr. Capel; she knew he had some money, and suggested my helping her at that time. I approached Mr. Capel about the loan. I was acting as agent for Mrs. Morgan in going to see Mr. Capel. She asked me to. She wanted to take up this paper against the place on which they were about to sell the property, and said he would have the same paper that they would have, the first paper; in other words, that he would stand in their place; that was what the money was for, to retire this original loan. My recollection is that the money borrowed from Mr. Capel was just enough to take up the fi. fa. on the property. . . The agreement was that Mr. Capel was to succeed to the rights of the loan company, because if she had not they would have sold the property and that was the only way she had of getting the money. . . The thing that was said there in the store that morning was that Mr. Capel was to take the place of the loan company. That was said. It was the understanding before I ever got the thing through. That was said all right. Mrs. Morgan told Mr. Capel that this was the only lien there was against the property, and that when he paid off this paper she was giving Mr. Capel the thing would be clear that there was nothing against it except the loan there." Mr. Capel testified: "At the time I made this loan to Mrs. Morgan, something was said about the loan of the American Investment & Loan Company. The best I can remember about our agreement, she said that I would be in the same place they were, and Wiley Jordan told me I would be in the same place they were. She said this loan company had a loan against it and was going to sell it, and she could not raise the money, and wanted me to let her have it. . . She said the loan company was going to sell it, and she said she would give me the same claim they had; said if I would make her the loan she would make me a deed; and said she would give me the same claim they had, because they were going to sell it if I did not, and she did not want to lose the place. . . I don't know what subrogation is yet; all I know is what you say. I meant that I would get the same claim they had, because

they were going to sell the property, and she would let me step in their place, is the way I understood it. . . She said that was the only lien on the property. I relied on what she said, and I also relied on what she said about me being in the same place with the other paper."

It appears that Mrs. Morgan remained in possession of the fifty acres of farm land as life-tenant, and also in possession of the house and lot, in Molena, until her death. The defendants tendered a deed from J. H. Morgan, guardian, to G. D. Dominick, dated July 22, 1912, conveying the same fifty acres of farm land. The deed recited that it was made under an order of court granted in 1911, for the purpose of reinvestment. It appears that this deed was given as security for a debt, and that the debt has been paid, and that the deed was not an absolute conveyance. There is no evidence tending to show that the money borrowed from G. D. Dominick on this deed of July, 1912, was intended to be or was used for the purpose of paying Mrs. Morgan as a consideration for her deed dated October 30, 1911, which was not recorded until March 24, 1915. The deed appears to be a voluntary deed. The Civil Code (1910), § 4110, provides that "Every voluntary deed or conveyance made by any person shall be void as against subsequent bona fide purchasers for value, without notice of such voluntary conveyance." The plaintiff testified that he had no notice whatever of this voluntary conveyance. If the deed was a voluntary one, it was void as against subsequent bona fide purchasers for value without notice. In my opinion the court did not err in rejecting the deed to Dominick to the fifty acres of land, as irrelevant to the issues. The case is different in its facts from *Federal Land Bank* v. *Barron,* 173 *Ga.* 242 (160 S. E. 228), where a deed properly executed, for a valuable consideration, was on record at the time the loan was procured from the Federal Land Bank, and of course the bank took with notice of that deed; but in the instant case the deed on record was a voluntary deed as alleged, and so far as the evidence discloses to the contrary; and that being true, I think the section of the Code cited above is in point and controlling. Capel inquired of Mrs. Morgan, at the time of lending the money to her to take up the security deed in favor of the American Investment & Loan Company, whether there were any other claims against the property in question; and she replied that the title was absolutely clear, with the ex-

ception of the security deed of the American Investment & Loan Company. This being so, I think the case is very different in its facts from the *Barron* case, supra. The statement is made by the majority of the court that the reinvestment was made and the proceeds invested in a remainder interest in town property in Molena belonging to Mrs. Morgan. On the contrary the record shows that the title to the fifty acres of land is in the remaindermen, and that they are in possession of the same. It further appears from the record that the deed from J. H. Morgan to G. D. Dominick was a security deed which was later paid off and canceled.

Under the pleadings and evidence in the case I think that the plaintiff was entitled to be subrogated to the lien of the American Investment & Loan Company. In *Mortgage Guarantee Co.* v. *Atlanta Commercial Bank,* 166 *Ga.* 412, 419 (143 S. E. 562), Mr. Justice Gilbert said, quoting from *Wilkins* v. *Gibson,* 113 *Ga.* 31, 47 (38 S. E. 374, 84 Am. St. R. 204) : "We think the safer and better rule to be, and we therefore hold, that subrogation will arise only in those cases : [1] where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay; or [2] where he had some interest to protect; or [3] where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." In *Wilkins* v. *Gibson,* supra, it is said : "One who advances money to pay off an encumbrance upon realty, at the instance either of the owner of the property or the holder of the encumbrance, either upon the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby; and to this end equity will set aside a cancellation of such security and revive the same for his benefit." In *Thomas* v. *Lester,* 166 *Ga.* 274 (3) (142 S. E. 870), it was held : "Where security given for the loan of money which is used to pay off an encumbrance

turns out to be void, although the person taking it expected to get good security, he will be subrogated to the rights of the holder of the lien which the money advanced is used to pay; and in such case the person advancing the money can not be regarded as a volunteer, there being no intervening equity to prevent subrogation. This rule applies where the security fails because of partial or total want of title in the person giving it, or where it fails of its purpose because of some defect in its execution, or because of want of authority or capacity in the person executing it. The doctrine of subrogation rests upon principles of equity and justice, and is intended to afford protection to a meritorious creditor, and to prevent the sweeping away of the fund or property from which in good conscience he ought to be paid." In *Mortgage Guarantee Co.* v. *Atlanta Commercial Bank*, supra, this principle was distinctly recognized. I conclude that under the pleadings and the evidence, and the authorities cited, J. W. Capel, as the holder of the security deed executed by Mrs. Willie R. Morgan, should be subrogated to the rights of the American Investment & Loan Company.